DANELS *vs.* TAGGART's Adm'r.—December 1829.

T died in a foreign country, leaving his partner K his executor there ; who, upon his return to *Maryland,* renounced all right to administer upon T's estate here. Letters of administration were then granted to the complainant, who filed a bill against K and D, requiring an account and settlement of various claims; some of which related exclusively to transactions of a partnership which had subsisted between K. D. and T.; others, to demands of the intestate against both of his surviving partners; and others, to misapplications of the intestate's property, by both and each of them after T's death. The dates of these transactions were not alleged. To this bill, D pleaded in bar, "That he finally settled and adjusted with K, executor of T deceased, after the death of the said T, an account in writing, and by said account, the balance due to the defendant by the estate of the said T on the 25th Oct. 1823, was admitted to be, &c. which account is just and true." The complainant demurred. The Chancellor overruled the plea, and ordered the defendant to answer over. HELD, that an appeal did not lie from this order, which decided a mere question of pleading, and settled no right between the parties, and that this plea was void for uncertainty.

The plea of an account stated to such a bill as the present, cannot be sustain-

ed, unless it be supported by answer, denying the receipt of any part of the money, for which the defendant is called upon to account, subsequently to the time when the account stated, was adjusted.

By taking issue on a plea in equity, the plaintiff admits its sufficiency as a bar, if the facts which it asserts are established by proof; and if on such an issue, the matter of the plea is proved, the bar is complete, and the bill must be dismissed.

APPEAL from the Court of Chancery. The bill of complaint, in this case, was filed on the 9th of November, 1824, by *William Taggart*, administrator of *Henry Taggart*, (now appellee) against *John D. Danels*, (the appellant) and *John C. King*. The bill stated, that the testator, *Taggart, Danels* and *King*, as partners in trade, were the owners of a considerable amount of property and *choses in action*, and were largely indebted to others; that the testator, besides his undivided interest in this firm, had a large amount of separate property of his own, consisting principally of vessels, and of debts due from this firm of *Taggart & Co.* and others; that thus situated, *Henry Taggar*t died, leaving his partner, *King* as his executor; that afterwards *Danels* and *King*, took, collected, and applied, nearly the whole of the testator's property, as well as that which he had held in partnership with them, as that which was exclusively his own, and applied it to their joint use and benefit; that a part of the testator's property was taken and applied by *Danels* to his own individual use; and that *King* having renounced the office of executor of *Henry Taggart* in this State, administration was granted to the complainant, who now calls on *Danels* and *King* to account for the property so taken and used by them.

The defendant, *Danels*, " by protestation, not confessing or acknowledging all or any of the matters or things in the complainant's bill of complaint contained, to be true, in such manner and form as the same are therein and thereby alleged and set forth, and as to all relief prayed in and by the complainant's bill of complaint, and as to all the discovery thereby prayed, save and except so much thereof as prays this defendant may discover if any account has been settled, by this defendant, with the said *Henry Taggart* in his life time, or with his executors since

his death, doth plead in bar, and for plea says, that he this defendant, finally settled and adjusted with *John C. King*, executor of the estate of *Henry Taggart*, deceased, after the death of the said *Taggart*, an account in writing, and by said account the balance in writing due to this defendant by the estate of the said *Henry Taggart* on the 25th of October, 1823, was admitted to be $38,341 16, which account is just and true to the best of this defendant's knowledge and belief."

The complainant "by protestation, not confessing all or any of the matters and things in the plea of the defendant *John D. Danels*, contained, to be true in such manner and form as therein set forth and alleged, does demur to the said plea ; and for causes of demurrer, among other causes of demurrer, shows that the said plea is not accompanied, as part thereof, by the account therein referred to ; and further, that the said plea is no answer to, and does not undertake to answer the fraud and combination alleged in the complainant's bill; and that the said plea in no respect answers or meets the charges of said bill, or precludes the relief therein sought, or bars the inquiry therein made. Wherefore, and for divers other good causes of demurrer appearing in said plea, this complainant does demur thereto, and he prays judgment of this honorable court, whether he shall be compelled to make any farther and other reply to the said plea ; and he humbly prays that the said *Danels* may be compelled to answer over to the said bill of this complaint, &c."

The defendant, *King*, filed an answer to the bill.

BLAND, Chancellor. (December term,) 1825. This case standing ready for the hearing on the demurrer to the plea of *Danels*, the counsel on both sides were heard, and the proceedings were read and considered.

It appears from the allegations of the parties, (and here the Chancellor stated the substance of the bill as before,) to which *Danels* pleads an account settled with *King*, as executor of *Tagart*, in bar; to which plea the complainant has demurred. The plea of *Danels* is intended as a bar to the complainants prayer, for an account and relief grounded on the three charges of his

bill.—*First*, that *Danels* and *King* have taken, or converted to their own use, the testator's undivided interest in the property of the firm of *Taggart*, *Danels* and *King*. *Secondly*, that *Danels* and *King* have taken, or applied to their own use, the testator's separate property; and *thirdly*, that some portions of the testator's property have been taken or applied by *Danels* alone, to his individual use. If the demurrer to this plea be sustainable, as has been urged, on the ground, that the settled account thus pleaded, is not such a one as could, in any form, be pleaded in bar to this bill, it will relieve the court from the necessity of noticing any thing else, that has been pressed upon its attention in the course of the argument.

A settled account, is an adjustment of the adverse pretensions and claims of two or more parties; or a mutual compromise and arrangement of their respective debits and credits. It is, in effect, an agreement between the parties; and operates reciprocally like all other contracts and agreements. The idea of a settled account, or of a contract or agreement, therefore, necessarily involves the notion of two parties, the one contracting, and the other contracted with; or of parties who mutually agree together in relation to a particular subject. And this notion, as to two parties, also necessarily supposes each of them have not only a capacity to contract, but in almost every instance, a capacity to sue and be sued. But the capacities to contract and to sue, with which each adult citizen is endowed, in general is without limit, for the disposition and protection of his property and person against all others, may be, and are, in many instances, by the particular nature of the subject of the contract or suit, enlarged, modified or extinguished. And the general capacity of an individual to contract or to sue, may also be circumscribed or fettered by his representative or official character, or by the peculiar relationship to others, in which he may be placed. These positions need no illustration.

Now as to the case before us; let it be supposed, that *Taggart* and *King* only, had constituted this firm or copartnership; in that case it must be admitted, that when, on the death of *Taggart*, the two characters of surviving partner and executor

devolving upon *King*, and became united in himself, he could not contract or sue respecting the undivided interest of the testator *Taggart*; because *King* could not contract with or sue himself; and while he chose to act as executor, there would be no other party representing *Taggart's* interest to contract with or to sue. And, therefore, if *King*, the executor and surviving partner, was the debtor of his testator, that debt, by operation of law, would become assets in his hands for the benefit of the creditors and representatives of the deceased; and, if he was, on the other hand, a creditor, he might retain out of the assets of the deceased the amount of his claim against all others. In such case, it seems to be quite clear, that *King* could not have the capacity, in any manner, to make such a settlement of accounts, of himself alone, of the partnership affairs of *Taggart* and *King* as would be pleadable in bar of a bill like this, brought by the administrator of *Taggart* against him for an account.

But, in this case, *King* is not the only surviving partner—there is another, *Danels*; and it is *Danels* who pleads the settled account with *King* as executor in bar. But the union of two interests in *King*, that of his own, and his testator's, had deprived him of the capacity to make any binding settlement, or agreement as to his testator's share in relation to his own. This alleged settlement then, if binding at all, or in any way, could only operate between *King* and *Danels*; but the whole partnership affair, as between *Taggart* and *King* would remain open, or unaffected by it. This plea avers and sets out the balance, between *Taggart* and *Danels*. But in a partnership or joint trade, carried on by three or more persons, it is impossible to settle an account with some of the members of the partnership, so as to ascertain the balance due from any one, to any other member of the concern; and more especially so, as in this case, where the partner as to whom the balance is to be ascertained, is himself a creditor of the firm. Wherever a balance is spoken of as the result of a settlement of partnership accounts, a partial estimate is never understood. It is the result of the adjustment of the whole and entire partnership concerns.

It is true, that these three partners *Taggart, Danels* and *King*,

as to their respective rights, might have made any special agreement, or settled in any manner they thought proper, either in person or by their agents duly authorised.   But *King* as executor had only the general authority incident to his office ; and this plea of *Danels* is not based upon any special agreement of any sort ; but upon a general settlement of the entire partner-ship accounts, and sets forth a balance which could only be the result of such an entire settlement.   In this case, however, no such settlement could have taken place, in the manner al-leged in the plea, with *King* as executor of *Taggart ;* because *King* was incapable of settling, or agreeing with himself as part-ner and executor, and, consequently, *Taggart's* interest in the alleged settlement could not have been represented and protect-ed by any one capable of settling and contracting for his rights. For as to the testator's rights and his interest, it was as if a set-tlement had been made during his life time, between *Danels* and *King*, at which *Taggart* was not present, and of which he had no knowledge.   So far then as this plea relates to a settled ac-count of the partnership affairs of *Taggart, Danels* and *King*, it has no foundation and cannot be sustained.

The bill charges, that the testator's separate property was also applied to the joint use of *Danels* and *King*, and prays, that they may account for that likewise.   As to the testator's sepa-rate personal estate, there can be no doubt, that his executor, *King*, might have disposed of it, in like manner, as his testator might have done.   And if *King* had wasted it, in any way, he himself would have been chargeable with the *devastavit ;* but the right of any one, fairly acquired, from him would be unim-peachable.   If *King*, as executor, had settled an account with *Danels*, as to any dealings which *Danels* had respecting the separate estate of the testator, such a settled account might have been pleaded in bar, of a bill brought against him for an account of such dealings ; because, such a plea, in such a case, would be a fair and direct avoidance and defence to such a bill.

But this bill presents a case which is formally and substantial-ly different.   In equity, as well as at law, the plaintiff can only have relief, or recover according to the nature of his case ; and the

*allegata* and *probata* must substantially correspond. The charge, in this case, is, that *Danels* and *King* jointly converted the property of the testator, to their joint use and benefit. This charge cannot be sustained by proof, that either of them, separately converted it to his own separate use. They are charged as joint wrong doers, who have derived a joint benefit and advantage from their wrong; and the proof, when produced, must be applicable to that charge, or it is foreign from the case. Now it certainly cannot be, that joint wrong doers, any more than joint agents, will be allowed to plead a stated account between themselves, as a bar to a bill against them, for an account of the property so by them converted. In equity, those who have jointly taken and used the property of another; are considered as his trustees or bailiffs, and as such are held accountable. This objection to this plea, applies with equal force, and is an additional objection to it, so far as it relates to the undivided interest of the testator in the partnership funds, which the bill charges *Danels* and *King* with having taken and converted to their joint use.

As to the third charge, about which the bill calls for an account; that is, as to the property of the testator *Taggart* which came into the hands of *Danels*, and was applied to his individual use. If there had been a settlement of accounts between *King* as executor of *Taggart* and *Danels* in relation to such property, and such settlement had been properly pleaded, it would have constituted a good and sufficient bar to this charge in this bill. But the plea under consideration is not such a one, It is a plea in bar of all the relief, and all the discovery prayed by the bill, founded on a settlement of accounts between *Danels* and *King* as executor of *Taggart*, comprehending all the subjects set forth in the bill ; and it avers a balance to be due from *Taggart's* estate unto *Danels*, as the result of that general, comprehensive settlement of accounts. In pleading an account stated, as a bar, it is essentially necessary to set forth the particular balance found to be due. But if, as in this case, it appears, that the balance thus set out, and which it is essentially necessary should be averred to constitute a good plea of an ac-

count stated, is deducible from a statement, and is the result of a settlement, the greater part of which was of no avail, or was improper, it follows, that such plea must be considered as substantially defective, in one of its most essential parts. It is as substantially deficient as it would have been, if it had been wholly silent as to the balance ascertained to be due; since a specification of a balance derived from a source manifestly vicious, is as no statement of any balance whatever.

Upon the whole it is considered, that this plea is bad; *first,* because *King* being himself executor and surviving partner, could not, and had not the capacity to make such a settlement with *Danels* of the partnership affairs of *Taggart, Danels* and *King,* as *Danels* might plead in bar of this bill; *secondly,* this plea is bad, because, the bill charges *Danels* and *King* with having jointly converted to their own joint use, as well the undivided partnership property as the separate property of the testator, and to such a charge, a settlement between *Danels* and *King* can be no bar; and *thirdly,* this plea is bad, as to so much as relates to property of the testator alleged to have been converted by *Danels* to his individual use; because, the balance set out in the plea is shown, by the general reference to the whole bill, to be the result not merely of an account of such property, but of that inclusive of all the other transactions stated in the bill, respecting which, an account between *Danels* and *King* could be of no avail against the complainant. *Decreed,* that the plea of the said *Danels* be, and the same is hereby overruled; that the demurrer be sustained; and that the said *Danels* do make a full and sufficient answer to the complainant's bill of complaint, and the matters therein charged.

From this decree *Danels* appealed to this court.

The cause was argued before Buchanan, Ch. J. and Earle, Martin, Archer and Dorsey, J.

*Winchester,* for the appellant. The bill of complaint in this case is simply a bill calling for an account, and being so, the plea of an account stated is a flat bar. The plea is in proper form, and is a proper answer to such a bill. *Mitf. Plead.* 210,

211. The bill does not charge fraud, nor allege any account stated, nor fraud in stating any account. The plea is, therefore, a proper answer to the bill. *Cooper's Plead.* 279. 1 *Madd. Ch.* 81 (83.) Fraud cannot be proved, unless it is alleged in the bill. *Westly vs. Thomas,* 6 *Harr. & Johns.* 28. A surviving partner may be executor to his deceased copartner, as well as a debtor or creditor be executor to his creditor or debtor ;—and as such settle all the affairs of the partnership, *Burden vs. Burden,* 1 *Ves. and Beames,* 170.

*Mayer* and *Taney* (attorney general) for the appellee. The doctrines of a plea of an account stated ; and whether or not the plea here pleaded is applicable to such a case as this, are fully commented upon and laid down in *Cooper's Plead.* 277, 279, 252, 225, 228, 229, 282, 283. *Mitf. Plead.* 208, 209, 211, 236. *Beames Pl. Eq.* 229, 226, 237. *Taylor vs. Haylin,* 2 *Bro. Ch. Rep.* 310. *Vernon vs. Vawdry,* 2 *Atk.* 119. *Drew vs. Power,* 1 *Sch. & Lef.* 182, 192. *Kinsman vs. Barker,* 14 *Ves.* 579. *Newman vs. Payne,* 2 *Ves. jr.* 200 *Middleditch vs. Sharland,* 5 *Ves.* 87. *Beaumont vs. Boultbee,* Ib. 485. *S. C.* 7 *Ves.* 599. *S. C.* 11 *Ves.* 358. *Lady Ormond vs. Hutchinson,* 13 *Ves.* 47. *Chambers vs. Goldwin,* 5 *Ves.* 835. *S. C.* 9 *Ves.* 265. *Roberts vs. Kuffin,* 2 *Atk.* 112. *Roche vs. Morgell,* 2 *Sch. & Lef.* 725, 727, 728. *Bayley vs. Adams,* 6 *Ves.* 586, 596. *Goodrich vs. Pendleton,* 3 *Johns. Ch. Rep.* 384. *Hawkey vs. Simpson,* 3 *Atk.* 303.

Where the party is not presumed to have a counterpart of the account, it must be produced with the plea of an account stated. Here, it could not be presumed, that the complainant had any knowledge of the settled account. *Willis vs. Jernegan,* 2 *Atk.* 252. The plea should be signed, *Hodder vs. Watts,* 4 *Price,* 18. *Beames Plead.* 236, (*note a.*) It should deny all badges of fraud, *Goodrich vs. Pendleton,* 3 *Johns. Ch. Rep.* 384. A charge amounting to fraud is a charge of fraud. A charge of bad faith, is a charge of fraud; and the plea should deny the fraud, and all the circumstances amounting to fraud. *Beames Plead.* 34, 35, 236, 237. It is not stated in the plea, when or where the account was settled. The executor of a deceased

copartner, might by conniving with a surviving copartner, so settle the accounts of the partnership, as to bring the deceased partner indebted to the firm, and by that means sink the whole estate of the deceased partner, and divide the profits between themselves. Whether or not any such object was in view, in this case, is of no sort of consequence. The act is not sanctioned by principle.

*Wirt* in reply. The only question in this case arises on the pleadings. Upon the coming in of the plea, the complainant should have amended his bill. No injury could arise from this mode of proceeding. That which is asked by the bill is for discovery and relief. If the plea is a bar to relief it is also a bar for a discovery. *Cooper's Plead.* 291. Is the matter pleaded a bar to the relief? A surviving partner may act as executor of his deceased partner. This is not denied; and if he can, why can he not settle the partnership concerns, and do what the deceased might have done? No settlement which the executor might make could benefit himself. He was always liable to be called on by a future administrator or the representatives of his intestate. While *King* was the executor of *Taggart* he was competant to give a discharge to any debtor, &c. No fraud is charged in the bill so as to affect the plea. The fraud to affect the plea must charge fraud in the settlement and the stated account. There is no more charged in this bill, than there is in all ordinary bills against the fairest characters in the community. If it is a bill for an account, then is the plea, an answer and bar to the account asked for. *Mitford,* 210, 211. The bill states that there had been no account settled, and calls for one. The plea in answer says that there was an account stated, &c. If the bill had charged an account settled by fraud, &c. Then the plea must have denied the fraud, &c. *Drew vs. Power,* 1 *Sch. & Lef.* 192. *Cooper's Plead.* 279. But here no fraud or error has been alleged to have taken place in the account stated. The plea is full to all essential parts. Why did not the complainant take issue on it, and put the defendant to his proof? The complainant might in a variety of ways have called for the account. But it is said that the plea must

be good in whole; and that if it is bad in part, the whole is vitiated. *Mitford Plead.* 243. *Cooper's Plead.* 230.

DORSEY J. delivered the opinion of the court—To the plea of an account stated, filed by the appellant, various causes of demurrer, both general and special, were assigned by the appellee; and upon hearing, the plea was overruled by the Chancellor. To test the correctness of that decision the present appeal hath been prosecuted.

A preliminary question, however, presents itself for the consideration of this court, viz: is the decree or order, passed by the Chancellor in this case, of such a character, as to vest in the appellant an immediate right of appeal. That it does not, we think manifest, on reference to the principles established in the cases of *Snowden et al. vs. Dorsey et al.* 6 *Harr. and Johns.* 114, and *Thompson vs. M'Kim,* 6 *Harr. and Johns.* 302, and *Williamson vs. Carnan et al.* 1 *Gill* and *Johns.* 184, and *Hagthorp et al. vs. Neale, Adm'r of Hook,* 1 *Gill and Johns.* 270. It decides a mere question of pleading: it settles no right between the parties. "If the plea is overruled, the defendant may insist on the same matter by way of answer." *Mitf. Plead.* 248. The only conclusive effect of the decision then is, that it drives the party to the necessity of asserting the same defence in a different form of proceeding; the consequence of which is, that he is subjected to the expense of producing his testimony to substantiate the allegations, relied on as his discharge. The same expenditure, he must have incurred, had issue been taken on the plea; and for this expenditure, in contemplation of law, he is indemnified by way of costs, if successful on the trial. It is not a decretal order, which in the language of the court, in *Thompson vs. M'Kim,* "decides and settles the question of right between the parties," or, in that of *Williamson vs. Carnan et al.* which "so materially affects the rights and interest of the party, as to bring the case within the principle of *Thompson vs. M'Kim;*" but it is simply a decision, on a question of pleading, which leaves the whole matter in controversy open for future adjudication.

VOL. I.—41

Waiving, however, the objection to the regularity of the appeal; the overruling of the plea meets our entire concurrence. It is wanting in form and defective in substance : it contains not even the common conclusion, repeating the matters relied on in bar of the suit and praying judgment of the court, whether the defendant ought to be compelled to make any further or other answer to the bill. The plea states, in bar of the relief and discovery prayed for, "that the defendant finally settled and adjusted with *John C. King,* executor of the estate of *Henry Taggart,* deceased, after the death of said *Taggart,* an account in writing; and by said account, the balance, in writing due to this defendant by the estate of said *Henry Taggart,* on the 25th day of October, in the year 1823, was admitted to be $38,341 16½." The particular time or place, when the alleged settlement took place, is not stated, and, for aught that is contained in the plea, it might have beem made in the *State of Maryland,* after the granting of letters of administration to the appellee, and even after the commencement of this suit. But suppose it be conceded that the time of accounting was on the 25th of October, 1823, will this cure all objection to the plea as regards time? unquestionably not. The bill charges the defendant with having collected (but says not when) after the death of *Henry Taggart,* a large amount, or the whole of the debts, due to the firm of *Henry Taggart & Co.* amounting to $52,383 33; with having applied part of the personal property of *Henry Taggart,* enumerated in exhibits D and E, as of the value of $3260, to the payment of *Henry Taggart & Co's* debts; but says not at what time the application was made. The bill also charges that *Henry Taggart,* at his death, was sole owner of schooners *Centillo, Daphne* and *Cleopatra,* and one third of schooner *Leano,* and held a large interest in the Brig *El Presidente.* That all of said vessels were taken possession of and sold for the sum of $16,800; and the proceeds of sale applied to the defendants own use: but when the sales were made, and the proceeds received is not stated. That the Brig *Aquila,* owned by *Henry Taggart,* on her cruise between February and October, 1823, made many prizes, which were con-

demned and sold ; and the proceeds, amounting to upwards of $10,000, received by the defendants and applied to their own use, but when received is not alleged. That in a subsequent cruise she made captures, the proceeds of which were received by *Danels*, and amounted to upwards of $30,000; and subsequently made prizes of great value, which were received in like manner. That *Henry Taggart*, at his death, owned one half of the *Brig El Vencedor*, the earnings of which, received by the defendant, *Danels*, had been $64,000, but when received does not appear. That individual debts, due *Henry Taggart*, at his death were collected by the defendants, and appropriated to their own use, to the amount of $57,440; of the time of receipt nothing is said. Admitting then, what the plea does not distinctly aver, (but what is indispensable to its validity) the time when the account was stated, the Chancellor could not have done otherwise than overrule the plea. It covers not the case set forth in the bill: every word of it may be true, and yet according to the allegations of the complainant, the defendant may have received, subsequently to the time of adjusting the account stated, and be now bound to account for, all the items hereinbefore enumerated, amounting to the sum of $234,483 33. It is therefore no bar to the discovery and relief sought for. The plea, of an account stated, to such a bill as the present, cannot be sustained unless it be supported by an answer denying the receipt of any part of the money for which he is called upon to account, subsequently to the time when the account stated was adjusted. But relieved from this objection the plea is yet void for uncertainty. It alleges that the defendant *Danels*, settled and adjusted with *John C. King*, *executor of Henry Taggart*, " an account in writing;" but what transactions it embraced : whether it related to all or any of the subject matters, now in controversy, we are furnished not with even the means of conjecture. For aught that appears it may have been an account settled between the parties of the partnership concerns of *Taggart and Danels*, anterior to the admission of *John C. King* into the firm; or it may have been a settlement of transactions wholly unconnected with all or any of the claims of

which the defendants are now called on to answer. Upon such a plea the plaintiff could not have taken issue. By doing so he would have admitted the sufficiency of the plea as a bar, if the facts which it asserted were established by proof. And if on such an issue the account stated had been proved, although it might relate to matters wholly foreign to those now in controversy, the bar would have been complete and the bill must have been dismissed.

"In pleading, (says *Mitf. Plead.* 237,) there must be the same strictness in equity, as at law ; at least in matter of substance." "A plea must follow the bill and not evade it." *Mitf. Plead.* 237. "All the facts necessary to render the plea a complete equitable bar to the case made by the bill, so far as the plea extends, that the plaintiff may take issue upon it, must be clearly and distinctly averred." *Mitf. Plead.* 240. The same doctrine is found in *Harr. Ch.* 229, and *Cooper's Plead.* 228. Apply these principles to the plea before us, and all doubt of its insufficiency must instantly vanish. Its defects are equally obvious, by comparing it with the precedent of a plea, of an account stated to be found in *Harr. Ch.* 618.

The plea, professes to be a bar to all the relief and discovery called for by the bill, a part of which refers to specific property of the late *Henry Taggart*, now in the possession and user of the defendant *Danels*, to such part of the complainant's prayer, the plea of an account stated, cannot be urged as a bar.

APPEAL DISMISSED WITH COSTS.