Chappell and The Chappell Chem. and Fertil. Co. *vs.* Funk.

(Decided 19th January, 1882.)

---

THOMAS C. CHAPPELL and THE CHAPPELL CHEMICAL AND FERTILIZER COMPANY *vs.* JACOB FUNK.

*Appeal allowed from an Order overruling a Demurrer to a Bill—Code, Art. 5, sec. 20—Multifariousness—Injunction— Nuisance.*

To a bill filed by the appellee against the appellants for an injunction, separate demurrers were filed by each of the defendants, mainly upon the ground that the bill was multifarious. The Court below passed an order overruling the demurrers, and requiring the defendants to answer on or before the first day of the succeeding term. From this order the defendants each severally appealed. On a motion in this Court to dismiss the appeal, it was HELD:

That the appeal lay; as under Art. 5, sec. 20, an appeal is allowed from any final decree or order in the nature of a final decree, and an order overruling a demurrer to the entire bill, finally settles, (so far as the Court passing it can do so,) a disputed right of the parties.

A bill was filed by the appellee against the appellants for an injunction to perpetually restrain injury to the complainant's property,

Chappell and The Chappell Chem. and Fertil. Co. *vs.* Funk.

brought about, as alleged, by the manufacturing of vitriol and sulphuric acid in a factory upon premises adjoining those of the complainant, conducted, controlled and operated by T. C. C. and The C. C. and F. Co. After averring the injury to the complainant's property, the bill prayed, " that they may upon their several and respective corporal oaths answer the premises, and that they may set forth and discover whether they or one of them (and if one, which one,) do not conduct, control and operate a factory at the place hereinbefore mentioned, wherein vitriol, sulphuric acid or sulphurous acid, or some of these products are made; and that they may be perpetually enjoined, restrained and prohibited from keeping up and maintaining the aforesaid factory, and from making vitriol, sulphuric and sulphurous acid, and other noxious and unwholesome products in the place where the said factory is situated; and that your orator may have such other and further relief as his case may require." The defendants each severally demurred to this bill mainly on the ground of multifariousness. HELD:

1st. That the demurrers were properly overruled by the Court below.

2nd. That the averments of the bill in regard to the nuisance and injury complained of, were sufficient to warrant the granting of relief by injunction.

APPEALS from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., MILLER, ALVEY and IRVING, J.

*R. Emmett Jones,* and *Wm. Shepard Bryan,* for the appellees, moved to dismiss the appeal :

Because the order overruling appellants' demurrers to the bill, and ordering them to answer, was not in any respect final, and was not the subject of appeal. It did not conclude the rights of the parties. As was said in *Boteler vs. State,* 7 *G. & J.,* 113: "For aught that we can learn from the record, the defendants may obtain the final judgment of the Court, and be entirely discharged

OCTOBER TERM, 1881.        467

Chappell and The Chappell Chem. and Fertil. Co. *vs.* Funk.

from the claim of the plaintiff." See also *Hazlehurst vs. Morris*, 28 *Md.*, 67 ; *Welch vs. Davis*, 7 *Gill*, 366.    If any one could imagine that overruling a defendant's demurrer was in the nature of a final decree or judgment, the question has been settled by *Wheeler vs. State*, 7 *Gill*, 33 ; and *Kearney vs. State*, 46 *Md.*, 424, which expressly decide the contrary.

*Charles Beasten, Jr.*, and *S. T. Wallis*, for the appellants, against the motion to dismiss the appeal.

The authorities cited in the brief of the appellee, have no relation to the subject, being all cases at law, in which the overruling of a demurrer is held to be not a final judgment, from which an appeal can be taken under the statutes applicable.    Upon this, it is not to be presumed, that there can be much difference of opinion.

In the case of the *Collateral Sec. Bank vs. Fowler*, 42 *Md.*, 393, the position of which, upon the question of the right of appeal, was identical with that of the case at bar, this Court entertained the appeal and remanded the cause, with leave to the respondent to answer over, the ruling below, on the demurrer, having been sustained.    It is true there was no motion to dismiss, but the question of the right of appeal stood palpable, upon the threshold of the controversy here, and could not possibly have been overlooked.    As between counsel, it was not regarded as an open question, and the Court will perceive that if it *had* been considered as available, it would have disposed, without more, of a very nice point of equity practice—for the purposes of that case, at all events.

Upon principle, it is difficult to perceive why an order overruling a demurrer to the bill, is not in "the nature of a final decree," under the liberal construction which the Court has put repeatedly upon those words.    An order sustaining a demurrer is obviously final, so far as the complainant is concerned.    An order overruling a de-

murrer, is a final decision that the complainant is entitled to relief, as a matter of law, upon the case made by the bill.   Thenceforward, he has nothing to do but establish his facts.   Why should the defendant be put to the trial of proof of the facts, leaving the question still open behind him, as to whether they will make any case, even if proven ?   It would seem to the interest of both complainant and defendant, that the case on the law should be settled in advance of a controversy, protracted and expensive, which may turn out to have been entirely needless.   What benefit would a respondent in such a case have from noting his appeal and carrying it up with the rest of the proceedings, after a final decree upon the proof ? Can he stop the operation of such an order, by giving bond during the pendency of the suit ?   Obviously not.   And the result of these considerations plainly is, that a demurrer to a bill is useless, if there be no appeal when it is overruled.   A respondent gains nothing by it if he cannot have his issue of law tried by the appellate tribunal, until he has gone through the delay and expense of trying his issue of fact.

*Same Counsel* for the appellants.

If the bill is so framed that the discovery sought against the corporation could disclose such a state of facts as to show that said body corporate has nothing to do with the operations of said factory, but that Thomas C. Chappell is operating said factory, then the bill is demurrable by the corporation defendant ; and if it is also framed so that the discovery sought against Thomas C. Chappell could disclose such a state of facts as to show that it is not operated by him but by the corporation, then the bill is equally demurrable by Thomas C. Chappell, and in so far as the facts sought to be disclosed against either defendant affect the operations of the other defendant, in creating the injury complained of, then such facts are susceptible of

Chappell and The Chappell Chem. and Fertil. Co. *vs.* Funk.

proof by witnesses, cannot be brought out by discovery, and the bill is also on that ground demurrable. *Queen of Portugal vs. Glyn*, 7 *Clarke & Fin.*, 466.

The appellee, in this case, must decide for himself before he brings his action, one of two things. First, whether his action be joint against the appellants. Second, if it be against one only, which one—for whichever one it may be, the other is improperly joined.

The bill is uncertain as to persons against whom relief is sought; it states circumstances merely, and claims relief against the defendants, or one of them, without stating which one. The discovery sought may subject the defendants to penal consequences, while there is no allegation that the matters sought to be discovered are material, and that they are indispensable as proof to complainant, and that he has no other proof than from the answers of the respective defendants. In addition to this, the matters sought to be discovered are susceptible of proof by witnesses, under the laws of the State of Maryland, relating to evidence. The discovery sought against the corporation defendant, should have been against its officers. In so far as the bill discloses, the defendants have an equal equity with complainant.

Besides, the bill is multifarious. For all of which reasons it is properly demurrable ; and it ought to be dismissed. *Story's Eq. Pl., sec.* 271, *and note; Fiery vs. Emmert, et al.*, 36 *Md.*, 464; *Edwards vs. Edwards, Jacobs' Rep.*, 335 ; *Saxton vs. Davis*, 18 *Ves.*, 80 ; *Ellicott vs. Ellicott*, 2 *Md. Ch. Dec.*, 468, 470 ; *Armitstead vs. Durham*, 11 *Beav.*, 422 ; *Brown vs. Swan*, 10 *Peters*, 502 ; *Oliver vs. Palmer, et al.*, 11 *G. & J.*, 445 ; *Story's Eq. Pl., sec.* 553 ; 1 *Story's Eq., sec.* 74 ; *Gibbs vs. Claggett*, 2 *G. & J.*, 29.

*R. Emmett Jones,* and *Wm. Shepard Bryan,* for the appellee.

*First.* Jacob Funk had the right to pursue his lawful business, and to occupy his dwelling in peace and quiet-

470      MARYLAND REPORTS.

Chappell and The Chappell Chem. and Fertil. Co. *vs.* Funk.

ness, and to be protected in the enjoyment of these rights. The destruction of his business, and the deprivation of all reasonable comfort in the occupation of his home, are injuries which cannot be adequately compensated by pecuniary damages. The circumstances are specifically set forth in the bill of complaint, and present a strong case for an injunction. *Dittman vs. Repp*, 50 *Md.*, 516; *Pennsylvania L. C. Appeal*, and notes in the case in *American Law Register* of *October*, 1881.

*Second.* The complainant proceeds for the special grievance to himself. The suggestion in the grounds of demurrer, that the defendants are liable, (on the facts stated,) to criminal punishment, cannot be of any benefit to them. It would be strange indeed, if such a circumstance could authorize them to continue the nuisance. *Hamilton vs. Whitridge*, 11 *Md.*, 128.

*Third.* They are called upon to answer the bill of complaint. The complainant has a right to know how much of the bill they will admit, and how much they intend to deny. If there are any allegations in the bill of complaint which they cannot answer without subjecting themselves to criminal punishment, let them state upon their oaths that such is the fact, and ask the Court to decide whether they are compelled to answer these particular charges. But excusing them from answering a particular charge is one thing; and deciding that they are entitled to continue a nuisance is another thing. It may, however, be observed that the bill does not charge a public nuisance; but merely sets forth that the complainant is sustaining irreparable damage from the unlawful acts of the defendants.

*Fourth.* The bill charges that both of the defendants are carrying on the nuisance, and asks for an injunction against both of them. It also requires them to answer upon their several and respective oaths; and to set forth and discover whether they, or one of them, (and if one,

which one,) conduct the factory, which is the subject of complaint. They are both required to answer this inter-rogatory. It is certainly a proper question for them to answer. It is a strange position to assume that such a question would make the bill demurrable. If the inter-rogatory had not been inserted in the bill, it would still have been the duty of the defendants to answer as fully and explicitly as this question requires them to do. *Story's Equity Pleading*, secs. 852 and 855; *Methodist Episcopal Church vs. Jacques*, 1 *Johnson's Chancery Rep.*, 65. If they admit the matter charged, it will not be necessary to prove it. If they deny it, an issue will be made, which the complainant will have to sustain by proof. In no event will their answer be binding on the adverse party. The objection made to this interrogatory, assumes that even if the complainant sustains all the charges in his bill, he will not be entitled to relief, be-cause of the obnoxious character of the question.

MILLER, J., delivered the opinion of the Court.

The bill in this case was filed by the appellee against the appellants, for an injunction to perpetually restrain injury to the complainant's property, brought about as alleged, by the manufacturing of vitriol and sulphuric acid in a factory conducted and operated by the defend-ants upon premises adjoining those of the complainant. Separate demurrers were filed by each of the defendants, mainly upon the ground that the bill was multifarious, but the Court passed an order overruling the demurrers and requiring the defendants to answer on or before the first day of the succeeding term. From this order a separate appeal has been taken by each defendant, and there is a motion to dismiss the same upon the ground that no appeal lies from such an order.

By the law, regulating appeals from Courts of equity, (*Code, Art.* 5, *sec.* 20,) an appeal is allowed "from any

472 MARYLAND REPORTS.

Chappell and The Chappell Chem. and Fertil. Co. *vs.* Funk.

final decree, *or order in the nature of a final decree,*" and it is well settled, that an order of the latter character, to admit of an appeal, must be one which finally settles some disputed right or interest of the parties. *Dillon vs. Mutual Ins. Co.*, 44 *Md.*, 395. In our opinion an order overruling a demurrer to the entire bill, does finally settle (so far as the Court passing it can do so,) a disputed right of the parties. It is true that demurrers are no favorites of Courts of equity, nor are they often resorted to, but it is the undoubted privilege of a defendant in an equity suit to demur to the bill. By so doing he challenges and denies, either the jurisdiction of the Court, or that the bill, on its face, states any case which the defendant can be lawfully required to answer, or otherwise notice or defend. He says, in fact, to the complainant, you have no right to bring me into a Court of equity upon this case. If the demurrer be sustained, the complainant is out of Court, and it is conceded he can then appeal, for by such action the right to proceed with his case is finally settled against him, and in favor of the defendant. So if the demurrer be overruled, the Court by its order to that effect determines and settles in favor of the complainant and against the defendant, the disputed right of the former to proceed in equity upon the case made by his bill, and it seems to us not only convenient, but most important for both parties that such a question should be finally settled *in limine*, and by appeal if necessary, before the costs and expenses of a long litigation have been incurred. An order settling either way a right so important as this does not, in our judgment, fall within the class of mere interlocutory orders which can only be reviewed upon appeal from the final decree in the cause. Nor do we fear or anticipate that by allowing appeals from such orders, the privilege will be abused to the prejudice of suitors or the delay of justice. It has not been so in the past, though the appeal has been enter-

tained and acted on by the appellate Court, in every case where one has been taken from such an order. And even if we were inclined to put a different construction upon the statute and to deny the right of appeal in such cases we should find ourselves embarrassed if not precluded from so deciding, by the strong and numerous precedents in favor of the right, which we shall now briefly notice.

In *Alexander's Ch. Prac.*, 183, the learned author, in speaking of the various decisions under the Act of 1818, by which appeals were confined to "decretal orders," as not easily reconcileable, refers to the case of *Danels vs. Taggart*, 1 *G. & J.*, 311, in which it was adjudged that an appeal would not lie from an order overruling a plea, but says that in *Wolf vs. Wolf*, 2 *H. & G.*, 382, "it had been previously *held* that an appeal might be taken from an order overruling a demurrer." Afterwards by the Act of 1830, ch. 185, the phraseology of the law was changed, and it was made to read as it now stands in sec. 20, Art. 5 of the Code. Since the passage of that Act numerous appeals from orders overruling demurrers have been entertained by this Court. In *Young vs. Lyons*, 8 *Gill*, 162, and in *Williams vs. West*, 2 *Md.*, 174, no question as to the right of appeal was made, though the latter was argued by Mr. *Alexander* for the appellees. In *Maddox & Aur vs. White*, 4 *Md.*, 72, there was an appeal from an order granting an injunction, and also from an order overruling a demurrer to the bill, and here Mr. *Alexander*, for the appellee, made the point that no appeal would lie from the latter order, and said that though an appeal from such an order was entertained in *Wolf vs. Wolf*, yet the question was not raised in the case, and that in the subsequent case of *Danels vs. Taggart*, it was upon consideration, expressly adjudged that an appeal would not lie from an order overruling a plea, which he insisted, was in principle, the same, with reference to the right of appeal, as an order overruling a demurrer. The

Court in disposing of the case, deemed it unnecessary to notice the question as to the regularity of the appeal, because they were of opinion the appellee was entitled to an affirmance on the merits, but they entertained the appeal and affirmed both orders. After this come the cases of *Broadbent, et al. vs. The State*, 7 *Md.*, 416, and *Griffin & Lee vs. Merrill*, 10 *Md.*, 364. In the first the question was not raised in argument, but in the second, counsel for the appellants contended that an appeal would lie, and Mr. *Alexander* for the appellee permitted the point to go unanswered. This was a very plain case in which the attention of the Court was again expressly directed by counsel to the right of appeal from such an order, and the Court not only entertained the appeal, but *reversed* the order and dismissed the bill. This action of the Court, after its attention had been called to the question, falls but little short of an *express adjudication* that an appeal will lie from such an order. In fact it seems to have been treated on all sides as having settled the law on the subject, for in the subsequent cases of *Wilson vs. Wilson*, 23 *Md.*, 162; *Kunkel vs. Markell*, 26 *Md.*, 390 ; *Collateral Security Bank vs. Fowler*, 42 *Md.*, 393, and *Trego vs. Skinner*, 42 *Md.*, 426, appeals from precisely similar orders were entertained without further question either by Court or counsel. Now, while it may be conceded that action taken *sub silentio* in one or two instances would be entitled to very little consideration, yet the effect of a long series of cases such as we have cited cannot be overlooked or disregarded. If these precedents have not definitely settled the right of appeal in such cases, it is certain we cannot attribute to the expression falling *obiter* from the Court in the recent case of *Mayor, &c. vs. Weatherby*, 52 *Md.*, 449, the effect of settling the law to the contrary. In fact so far as the weight of precedent and practice goes it is clearly in favor of the construction we have placed upon the statute,

and sustains the right to appeal from such orders. The motion to dismiss must therefore be overruled, and we must determine whether the bill is open to the objections presented by the demurrers.

In view of what is said in the case of *Dittman vs. Repp,* 50 *Md.,* 516, and in the authorities there referred to and adopted, we think it very clear that the averments in this bill, in regard to the nuisance and injury complained of, are quite sufficient to warrant the granting of relief by injunction. The objection, however, mainly relied on is, that of multifariousness. The bill alleges that the "said factory is conducted, controlled and operated by one Thomas C. Chappell, and by The Chappell Chemical and Fertilizer Company," and after averring the injury to the complainant's property, resulting from the business thus conducted by the defendants, prays "that they may upon their several and respective corporal oaths answer the premises, and that they may set forth and discover whether they or one of them, (and if one, which one,) do not conduct, control and operate a factory at the place hereinbefore mentioned, wherein vitriol, sulphuric acid, or sulphurous acid, or some of these products are made, and that they may be perpetually enjoined, restrained and prohibited from keeping up and maintaining the aforesaid factory, and from making vitriol, sulphuric and sulphurous acids, and other noxious and unwholesome products in the place where the said factory is situated, and that your orator may have such other and further relief as his case may require."

Now the argument is, that the whole bill is to be taken together, that the discovery must be assumed to be applicable to the case intended to be made for relief, and when therefore the bill calls upon the defendants to disclose, "whether they or one of them, (and if one, which one,) do not conduct," or operate the factory, it is plain that it contemplates a case where the wrong is done by one of the

defendants, and not by both jointly, and where the complainant, notwithstanding his previous allegation of joint control and misconduct by both defendants, confesses that he does not know whether it is not the control or misconduct of one only, and does not know and cannot say which of the two it is, or whether it is either; that taking thus the whole bill together, it presents the case of a complainant, who believes himself injured by one of two parties, but does not know by which, and instead of making up his mind as to the wrong-doer, or suing both if he cannot, endeavors to unite them in an *alternative* proceeding, under the averment that while they are both guilty, he does not know whether either is, or if either, which; and that it cannot be competent for a complainant who suspects one of two parties of doing him a wrong, to get over the legal difficulty of an alternative and fishing bill, by first charging the two with a joint wrong, and then requiring them both to discover whether one or the other is or is not guilty, and if yea, which, to the end that the suit may be prosecuted against the one who confesses, and dismissed as to the other. Such is the argument, and it is unquestionably true that the whole bill must be looked at, and the praying and charging parts read together, for the purpose of ascertaining with what view it was framed. Nor, if this bill be such as the appellants' counsel have designated it, is there any doubt but that it is bad upon demurrer. We do not however regard it as open to such an objection. As we read it, the bill plainly charges that *both* of the defendants are conducting or carrying on the factory which creates the nuisance, and it asks for an injunction against *both* of them. It also prays that both of them may upon their several and respective oaths, *answer the premises*. If it had stopped here, and the following special interrogatory had not been inserted, it would have been the duty of each of the defendants to answer the charge that he was conducting the factory

OCTOBER TERM, 1881.            477

Chappell and The Chappell Chem. and Fertil. Co. vs. Funk.

jointly with his co-defendant, fully by denial or admission ; for it is an elementary doctrine of equity pleading, that if a defendant submits to answer, his answer must be full and perfect to all the material allegations of the bill, and he must admit or deny all the facts stated in the bill, with all their material circumstances, without any special interrogatory for that purpose. *Story's Eq. Pl.*, sec. 852 ; *Methodist Church vs. Jaques*, 1 *Johns. Ch. Rep.*, 65. In our opinion then, the mere unnecessary insertion of a special interrogatory, proper to be answered, and which the defendants were each bound to answer in answering the charging part of the bill, cannot have the effect to make the bill demurrable. If both admit the charge that they are jointly conducting the factory, it will not be necessary for the complainant to prove it, and if they deny it, then an issue will be made up, and the complainant will have to sustain the charge by proof. If one admits and the other denies participation in the conduct of the business, then it will only be incumbent on the complainant to prove the charge against the party denying it. In no event can the answer be binding upon the complainant. From these views, it follows that the order overruling the demurrers must be affirmed, and the cause remanded.

*Order affirmed, and*
*cause remanded.*

(Decided 19th January, 1882.)


Alvey, J., filed the following dissenting opinion, as to the right of appeal :

I cannot agree in the determination that this appeal should be entertained by this Court. It is taken from an order overruling demurrers to the bill, and directing the defendants to answer. It would seem to be too plain for argument, that this order is not a final decree, and it is

equally clear that it cannot, in any proper sense, be taken as "an order in the nature of a final decree;" and unless it can be fairly treated as an order in the *nature of a final decree*, the right of appeal does not exist. *Code, Art.* 5, *sec.* 20.

It has been repeatedly held by this Court, that the right of appeal from Courts of equity is a statutory right, and does not exist except where *expressly* given. *Dillon vs. Ins. Co.*, 44 *Md.*, 394 ; *Heath & Lovejoy vs. Irelan*, 14 *Md.*, 388; *Wheeler vs. Stone*, 4 *Gill*, 39 ; *Thompson vs. Mc-Kim*, 6 *H. & J.*, 302.

No appeal lies from any interlocutory order which does not definitively and finally settle some contested right involved in the litigation, as between the parties. 14 *Md.*, 388.

Such being the settled principle, what right involved in the litigation is finally determined by the order overruling the demurrers and requiring the defendants to answer ?.

It is the settled practice, if the demurrer to the bill be overruled, the defendant *must* be required to answer the bill by a certain day ; and he is then at liberty to plead or answer ; and by his answer, he may insist on the matters relied on by his demurrer. If he elects to rely upon his demurrer, and refuses to answer, the Court may then take so much of the bill as is well pleaded, covered by the demurrer, as confessed, and thereupon proceed to decree. *Alex. Ch. Pr.*, 58, 59 ; *Collateral Security Bank vs. Fowler*, 42 *Md.*, 393, 402. But, unless an opportunity be given to answer, after overruling the demurrer, no final decree can be entered ; and the entry of such final decree, without the opportunity to answer, would be plain and palpable error, for which the decree would be reversed. *Trego vs. Skinner*, 42 *Md.*, 426, 433 ; *Smith vs. Ballantyne*, 10 *Paige*, 101.

The order overruling the demurrer, therefore, simply determines that the bill is proper to be answered by the

defendant; but no final decree is determined upon, and such decree can only be settled and passed after the defendant's failure to answer, according to the requirement of the Court.

This is made manifest by looking to the nature and purposes of the demurrer.

At law, the demurrer imports, that the objecting party will not proceed with the pleading, because no sufficient statement has been made by the adverse party; but submits to the judgment of the Court, whether he is bound to answer. In equity, the demurrer has precisely the same import. It demands the judgment of the Court, whether the defendant shall be compelled to answer the complainant's bill, or that particular part of it to which the demurrer applies. *Mitf. Eq. Pl.*, 106, 107, 108; *Sto. Eq. Pl.*, secs. 436, 441. And if the demurrer be overruled, the simple judgment of the Court is, that the defendant be required to answer; and this falls exactly within the definition of an interlocutory order or decree, as given in *Seaton on Decrees, p.* 2. The order therefore, overruling the demurrer, determines no right, but only a mere question of pleading.

In this case, the order overruling the demurrers required the defendants to answer, according to the established practice; but instead of answering, or waiting for a final decree in default of answer, they have appealed to this Court.

Now, in actions at law, that no appeal will lie from the interlocutory judgment overruling a demurrer to the declaration or other pleading, but only from the final judgment, is too well settled to admit of a question; and this because such judgment neither settles nor concludes any right between the parties. It determines a mere matter of pleading. *Wheeler vs. The State,* 7 *Gill,* 33; *Welsh vs. Davis, Ib.,* 364, 366; *Boteler & Belt vs. State, use of Chew,* 7 *G. & J.,* 109; *Gittings vs. The State,* 33 *Md.,* 461;

*Dietrich vs. Swartz,* 41 *Md.,* 196. That being so, why should there be a distinction between the interlocutory judgment at law upon overruling the demurrer, and the same character of judgment or order in equity, in respect to the right of appeal, unless such distinction be made by statute? And clearly no such distinction has been made by statute, and, in my judgment, none should be made by decision.

But has not the question been substantially, and to all reasonable intents and purposes, decided by this Court, in the case of *Danels vs. Taggart,* 1 *G. & J.,* 311? In that case, to a bill for an account, the defendant pleaded in bar an account stated, and balance due thereon to the defendant. To that plea the plaintiff demurred, and the plea was overruled, and the defendant was ordered to answer the bill, as in this case. And upon an appeal from that order by the defendant, it was held, after full consideration, that the appeal would not lie. That the order determined no question of right between the parties, *but only decided a question of pleading.* In reason and principle I can perceive no substantial distinction whatever between that case and the present.

To show how this question has been considered by other Courts of high authority, I will take occasion to refer to a few cases.

In the case of *Forbes vs. Tuckerman,* 115 *Mass.,* 115, the Court had occasion to consider the nature and effect of an order overruling a demurrer to a bill in equity. And in holding the order to be a mere interlocutory order, having in its nature nothing final, Chief Justice GRAY, speaking for the Court, said that no decree is final, which leaves anything open to be decided by the Court, and does not determine the whole case. "Even an order allowing or sustaining a demurrer is not a final decree, unless, in terms or effect, it dismisses the bill and puts the case out of Court;" and he cites 6 *How.,* 103; 3 *Paige,* 505; and

*Baker vs. Mellish*, 11 *Ves.*, 68. And again, he says: "But it is well settled by the highest authorities, that even where an order overruling a demurrer is followed by an order taking the bill for confessed, and referring the cause to a master for an account, according to the prayer of the bill, neither is a final decree in any sense, but a mere interlocutory order in favor of the plaintiff, and on the return of the master's report the final decree may be the other way." For which he cites, *Smith vs. Eyles*, 2 *Atk.*, 385 ; *Bank U. S. vs. White*, 8 *Pet.*, 262 ; *Perkins vs. Fourniquet*, 6 *How.*, 206 ; and 16 *How.*, 82 ; *Pulliam vs. Christian*, 6 *How.*, 209 ; *Beebe vs. Russell*, 19 *How.*, 283, and *Gerrish vs. Black*, 109 *Mass.*, 474.

In the case of *De Armas vs. United States*, 6 *How.*, 103, on a question of the right of appeal, where the statute had provided, that in all cases the party against whom the decree might be finally given, should be entitled to an appeal, it was held, that an order sustaining a demurrer to the bill or petition, because it was multifarious, and because the names of proper parties were not set forth, was not, in any sense, a final judgment or decree from which an appeal would lie, inasmuch as the bill had not been dismissed, but was still remaining in Court. And the Supreme Court, in dismissing the appeal, speaking by Chief Justice TANEY, said: "Nothing is decided but a question of pleading, and a question as to proper parties. The petition appears to be still pending in the District Court; and the objections upon which the Court decided against the petitioners might be removed, if the appellants desired it, by an application to the Court for leave to amend. But if the petitioners did not move for leave to amend, and preferred taking the opinion of this Court upon the questions decided against them in the District Court, then, under the opinion given by that Court upon the demurrer, it should have proceeded to pass a final decree dismissing the bill. An appeal from that decree

would have brought the case legally before this Court, and authorized it to examine the grounds upon which the decree had been made."

And so in this case; if the defendants had determined to stand upon the demurrers, they should, by refusing to answer, have allowed the bill to be taken as confessed, and a final decree to be passed thereon, and from that taken the appeal, and not from the order simply overruling the demurrers.

Our statute was intended to regulate and *restrict* the right of appeal, with a view of preventing unnecessary delays and the accumulation of costs. Hence the right of appeal is confined to decrees that are final, or orders in *the nature of final decrees.* No order, therefore, that has not the nature and effect of finality in it, in respect to the subject-matter of the litigation, can be the subject of an appeal, except in those cases expressly provided for by the statute. Otherwise, it would be difficult, if not impracticable, ever to bring a much controverted litigation to an end. For if an appeal will lie from an order overruling a demurrer to the entire bill, it must, for the same reason, lie from an order overruling a demurrer to parts of the bill; and it is not difficult to perceive how such modes of defence may be resorted to for the purposes of delay, and to the great injury and annoyance of the party complaining. Affirming the order on the present appeal, the case is remanded, and if the defendants should fail or decline to answer, a final decree may be passed; but from that final decree another appeal may be taken by the defendants; and thus the litigation may be, if the parties are so inclined, most vexatiously protracted. This was never the design of the statute.

It is true, there have been cases brought into this Court on appeals from orders like the present; but the question of the right to maintain such appeals has never, before the decision in this case, been adjudicated. The appeals

were entertained, but the question of the right of appeal was passed by the Court *sub silentio*, and without decision. And as was said by the Court, in the case of *Snowden vs. Dorsey*, 6 *H. & J.*, 114, such cases should not be called into precedent. But the statute is imperative, and I am not willing to disregard it, not even to make the Court appear consistent.