The Collateral Security Bank *vs.* Robert Fow-
ler, Trustee, use of Isaac S. George, Assignee in
Bankruptcy of Isaac M. Denson, &c.

*Equity Pleadings—Effect of overruling demurrer to a Bill—
Right of an Assignee in Bankruptcy to continue by Supple-
mental bill proceedings in Equity instituted by the Conventional
Trustee of a debtor who is declared a Bankrupt during the pen-
dency of the proceedings.*

In August, 1873, the C. S. Bank, made a loan upon the hypothecation of cer-
tificates of stock owned by J. M. D. of the firm of D. & Q. Subsequently
D. & Q. conveyed their individual and co-partnership assets by deed of trust
to R. F. for the benefit of their creditors. R. F. as such trustee instituted
proceedings in Equity to recover the hypothecated stock upon the ground
that the signatures of J. M. D. indorsed thereon were not genuine, or
authorized by him. Pending the proceedings D. & Q. were adjudicated
bankrupts, and the suit was entered to the use of their assignee in bank-
ruptcy, who, upon leave obtained for that purpose, filed a supplemental bill
against the original defendants praying the same relief sought by the
original bill. On general demurrer to the supplemental bill, the Court
below overruled the demurrer, and ordered the demurrant to pay the costs
of the demurrer and to file an answer within twenty days. On appeal, it
was Held:

1st. That the supplemental bill was the proper course of proceeding on the
part of the assignee.

2nd. That the form of the order overruling the demurrer and requiring the
defendant to answer, wa in accordance with the practice and usage in this
State.

Appeal from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before Bartol, C. J., Stewart,
Bowie, Grason, Alvey and Robinson, J.

*Isidor Rayner* and *S. Teackle Wallis*, for the appellant.

*Sebastian Brown*, for the appellee, Isaac S. George.

*William A. Fisher*, for the People's Gas Company of Baltimore.

BOWIE, J., delivered the opinion of the Court.

The question presented by the present appeal is, whether an assignee in bankruptcy, can intervene by supplemental bill, in a cause, previously begun by a conventional trustee, in the Circuit Court of Baltimore City, to recover certain certificates of stock belonging to the debtor, and who was declared a bankrupt pending the suit, or the assignee must file an original bill, in the nature of a supplemental bill, to effect this object.

The leading facts developed by the record are as follows:

On the 11th of September, 1873, the late Robert Fowler, as assignee of Denson & Quincy of that city, filed in the Circuit Court of Baltimore, his bill of complaint, alleging that his assignors, being partners, as such, and as individuals, conveyed all their assets to the complainant, by a certain deed of trust, for the purposes therein mentioned.

That Denson held in his own right, two certificates of stock, in "The People's Gas Company," viz: one for fifty shares, numbered 2242, and another for fifty shares, numbered 2246, which (as the complainant charged,) had come to the possession of Benjamin F. Ullman, President of "The Collateral Security Bank," purporting to be assigned by Denson, but not in fact so assigned, or authorized by him to be assigned, and were presented by Ullman, "to The People's Gas Company," for cancellation, and renewal; and being so cancelled, two other certificates, of fifty shares each, were delivered by the People's Gas Company to the said Ullman, as President as afore-

said in lieu of the original certificates, and he still holds the same. It was further alleged, the original certificates were delivered to the bank by Quincy, without the authority or signature of Denson, or his assent, or ratification, and without consideration.

The bill further charged that the new certificates were void, and ought to be delivered up for cancellation, and others issued to the complainant, or in the name of "Isaac M. Denson," as of the original dates.

"The Gas Company," "The Collateral Security Bank" and "Isaac M. Denson," were made defendants, and the prayer for relief was, that the certificates issued to Ullman, as President, might be cancelled, and others issued to the complainant, or Denson, for the use of the complainant, and for other and further relief. "The People's Gas Company" and "The Collateral Security Bank," filed answers denying the material allegations of the bill. Denson answered, admitting them and consenting to the decree, as prayed.

This case was afterwards by order of the complainant's solicitors, entered to the use of Isaac S. George, assignee of Denson & Quincy, and the cause being so entitled, on the 9th of May, 1874, there was filed in the Court, a paper entitled:

"The supplemental bill of Isaac S. George, assignee in bankruptcy of Isaac M. Denson, and also of Denson & Quincy, to whose use was entered the suit of Robert Fowler, trustee of Denson & Quincy against the said defendants now pending in said Court."

Annexed to this was an application in writing, for leave to file the same, and for an order requiring the defendants to answer, whereupon, the Court passed an order granting the leave and commanding the defendants to answer by a day certain.

This bill recapitulates the proceedings previously had under the original bill, recites substantially its allegations ;

the answers of the several defendants, are referred to, and made a part of the bill; and by way of supplement, it is alleged that since the filing of the original bill, Messrs. Denson & Quincy, were duly declared bankrupts, and the complainant appointed assignee of the firm, and of each of its members, and by virtue of an assignment, executed in pursuance of the Bankrupt Act, the property of the firm, as well as that of its several members, as individuals, was transferred to the complainant, assignee in bankruptcy.

Therefore it was proper the suit should be prosecuted in the name of the complainant and accordingly the same had been assigned to his use.

It further alleged, that Robert Fowler, had since departed this life intestate, and Messrs. John H. and David Fowler, were appointed his administrators, and praying process against them and the former defendants, prayed for the same relief as prayed for in the original bill, and such other and further relief as the Court might think he was in equity entitled to.

The Collateral Security Bank appeared by counsel, and demurred generally, concluding with the usual prayer, craving judgment whether they are compelled to answer.

The case being submitted on demurrer, the same was overruled, whence this appeal.

The appellant assigns no cause of exception to any particular allegation or averment of the bill, but relies solely on the objection that the cause cannot be continued by the complainant by a supplemental bill, but should have been renewed by an "*original bill in the nature of a supplemental bill*," there being no privity of title between the complainant in the original bill and the present complainant, the appellee.

The objection, if judged by the difference in the terms, would seem to be more nominal than real, but the rights of the parties in the two modes of proceeding being essentially different, the question involved is of much practical importance.

" The distinction, (says Daniel,) may at first sight appear artificial, but it is attended by a considerable difference in its practical results ; for in those cases in which a supplemental bill only is filed, if there has been no decree, the suit may proceed after the supplemental bill has been filed, in the same manner as if the original plaintiff had continued such, except that the defendants must answer the supplemental bill, and either admit or put in issue the title of the new plaintiff ; but in the case of an original bill in the nature of a supplemental bill, the whole case is open ; ' a new defence may be made, the pleadings and depositions cannot be made use of in the same manner as if filed or taken in the same cause, and the decree, if any has been obtained, is no otherwise of advantage than as it may be an inducement to the Court to make a similar decree.' " 3 *Danl. Ch. Prac.*, 1666, 1667.

In the case of a supplemental suit, the benefit of the original decree is given the new plaintiff, and he is entitled to stand in the place of the original plaintiff, and have the benefit of the proceedings on the original bill.

The same learned author says : " Notwithstanding this essential difference between the modes of proceeding and effect of ' a supplemental bill' and ' an original bill in the nature of a supplemental bill,' there does not seem to be any general rule deducible from the authority determining the cases in which the transmission of interest of the sole plaintiff renders the one or the other form of proceeding applicable." *Ibid.*, 1667.

The rule, which seems according to the decisions some-times almost arbitrary, varies according to different writers. The test as to the application of the rule in case of a sole plaintiff, would seem to be whether the change of interest in the subject-matter was such by deed or operation of law as to render the bill or proceedings only defective, or whether it was so entire as to abate the suit ; in the first

Collateral Security Bank *vs.* Fowler, Trustee, &c.

instance a supplemental bill only is necessary.; in the second, an original bill in the nature of a supplemental bill is required.

"If any property or right in litigation vested in a plaintiff, is transmitted to another by deed or operation of law, the person to whom it is transmitted is entitled to supply the defects of the suit, if it become defective merely, and to continue it, or at least to have the benefit of it, if abated." * * * * "Supplemental bills are necessary, 1st, in respect of some defect in the original bill, or in some of the proceedings upon it: or, 2dly, In respect of new evidence discovered, or of some event occurring subsequent to the filing of the bill, which gives a new interest in the matter in dispute to a person who is not a party to the bill."

"Though a supplemental bill, properly so called, is a bill brought in respect of new matter arisen since the filing of the original bill, and before the original comes to a hearing, yet such a bill may be filed to add parties where the proceedings are in such a state that the original cannot be amended for that purpose." 2 *Maddock's Chy.,* 519.

"So, if a plaintiff becomes bankrupt, his assignees may file a supplemental bill, or rather an original bill in the nature of a supplemental bill." *Ibid.,* 523; *Williams vs. Kinder,* 4 *Ves.,* 387; 1 *Atk.,* 263; *Cooper's Reports,* 590; *Redesdale Tr. Pl.,* 51, cited 2 *Maddock's Ch'y,* 523, (2 *Amer., fr. 2nd London Edition.*) In *Story's Equity Pleading,* treating of bills not original, in suits instituted by persons "*sua jure,*" sec. 336, it is said, "When new events or new matters have occurred since the filing of the bill, a supplemental bill is, in many cases, necessary ; for such facts cannot be introduced by way of amendment. But here we are to understand that such new events or new matters do not change the rights or interests of the parties before the Court, (for then, pro-

perly speaking, the bill is not simply a supplemental bill,) but they merely refer to and support the rights and interests already in the bill. * * * *

"To entitle the plaintiff to file a supplemental bill, and thereby obtain the benefit of the former proceedings, it must be in respect to the same title, in the same person as stated in the original bill." *Sec.* 339.

In cases, where the bill is filed in "*autre droit*," "if the interest of the plaintiff entirely determines by death or otherwise, and some other person becomes entitled to the same property, under the same title as in cases of new assignees in bankruptcy, upon the death or removal of former assignees, or in the case of an executor or administrator upon the determination of an administration *durante minoritate*, or *pendente lite* the suit may be likewise added to, or continued by supplemental bill. For, in these cases, there is no change of interest which can affect the questions between the parties, but only a change of the person, in whose name the suit must be prosecuted." *Sec.* 340.

Mr. Story says this distinction between cases *in autre droit*, and cases of a plaintiff suing in his own right, was taken by Lord REDESDALE, and is not recognized by Cooper, and in his own opinion, there is no difference, but he adopts the text of the former.

We are not so much concerned about the authority for the distinction, as the reason assigned for it, which is not without force, *i. e.*, that there was no change of interest which could affect the questions between the parties, but only a change of person, in cases, instituted by plaintiffs in "*autre droit*." Whether the bill filed to continue and have the benefit of the former proceedings, be called a supplemental bill, or an original bill in the nature of a supplemental bill, it is clear, there has been a change only in this case, in the person to prosecute the suit, the interest of the original complainant having ceased by

Collateral Security Bank *vs.* Fowler, Trustee, &c.

operation of the bankruptcy of the holder of the certificates, and the appointment of the *cestui que use* as assignee.

The subject-matter of the suit was not changed, the right to new certificates of stock, remained unchanged ; and the relief sought is the same, viz: the issuing of new certificates to the person entitled by law to hold them.

If the original bill in this case, had been filed by the bankrupt, instead of Fowler, his trustee, there can be little doubt, that his assignee in bankruptcy, would have been allowed to continue the suit, by a supplemental bill, or an original bill in the nature of a supplemental, according to all the authorities. *Vide Story's Eq. Plead.*, sec. 349, *note* 5, where it is said "Whether a suit in equity is abated by the bankruptcy of the plaintiff, as well as defective, has been a matter of doubt. But it seems *now* thought, that the weight of authority is, that it is defective merely, and that the assignees may be brought forward by a supplemental bill. *Vide Cooper's Eq. Plg.*, 76, 77 ; *Mitford's Eq. Plg.*, by *Jeremy*, 65, *and note* (*t*) 66, *and note* 67 ; *Lee vs. Lee*, 1 *Hare*, 621 ; *Ante sec.* 329."

If the assignees may be brought forward by supplemental bill, they must have the right to bring the suit forward of their own motion.

The "convenience of justice" for which all these rules are devised, requires they should be mutual.

The case of *Winn & Ross vs. Albert & Wife*, is very similar in its more prominent features, to the present.

Messrs. Winn and Ross as conventional trustees, for the benefit of certain creditors of Jones, filed their bill in equity, to set aside a decree, which they alleged had been obtained by Albert and Wife, against Jones, by collusion and fraud.

Jones, having afterwards applied for the benefit of the insolvent laws Winn and Ross, were appointed his permanent trustees.

They then filed their petition to be admitted to file a supplemental bill and for relief.

The late Chancellor in his opinion says, "The principal objection is, that the supplemental bill differs from, and is in fact antagonistical to, the title relied upon in the original bill; it being contended that the plaintiffs cannot have the benefit of the former proceedings by a supplemental bill, but in respect of the same title."

It will be perceived, that the objection taken in *Winn & Ross vs. Albert & Wife* to the supplemental bill, is stated in almost the identical terms used in this.

After reviewing the authorities and works on Practice, (most of which have been cited in this case) he concludes that there was no such inconsistency or conflict between the title proposed to be introduced by the supplemental bill, and that set up in the original, as to induce him to refuse his assent to the prayer of the petition. 2 *Md. Ch. Dec.,* 44 *to* 48.

The intimation of the Chancellor that if Winn and Ross had been permanent trustees at the time of filing their original bill, they might have presented their claims in both characters, without being liable to the objection of multifariousness, does not, we think, materially affect the force of his decision upon the main question.

If the relations between a conventional trustee, and permanent trustees in insolvency, are such that they might be united in the same bill, there is the same analogy, between a conventional trustee and assignees in bankruptcy.

There can be no conflict of title, in a case where the whole interest in the subject-matter of controversy, is vested in the same person. The operation of the Bankrupt law divesting the interest, or estate of the bankrupt previously conveyed to the conventional trustee, confers the estate upon him by a superior title. The prior deed is not void, but voidable; and where the estate was conveyed to

a voluntary trustee, other than the assignee in bankruptcy, it has been held proper, upon a bill by the latter, to set aside the deed to the former to require the conventional trustee, to convey all his interest to the assignee. *Burkholder, et al. vs. Stump,* (*Dis. C. of U. S.*) *East. Dis. of Pa., Legal Intr., April* 21, 1871.

The question as to the property being between trustees and assignees on the one hand, claiming as legal custodians, and the defendants, claiming adversely, it is only consistent with equity and justice, that the continuity of the proceedings should be preserved, otherwise the rights of creditors might be lost. No possible injury can be done the defendants, by allowing the complainant to come in by supplemental bill.

The order of the Court below, from which this appeal is taken, overrules the demurrer, directs the demurrants to pay the cost of the demurrer, and that they do answer the supplemental bill within twenty days.

This form of order overruling a demurrer, is sanctioned by the English elementary works on Equity Pleading and Practice, and the practice and usage in this State.

Although it may be very proper, it is very unusual to file a special demurrer in Equity in this State; a general demurrer is almost uniformly put in; which is an admission of the facts alleged in the pleading demurred to, denying their sufficiency in law to sustain the claim or defence, for which they are pleaded.

The penalty imposed by the Code for filing a plea or demurrer, which is overruled or withdrawn, is the payment of the sum of ten dollars and the costs of the demurrer or plea, and to be in contempt until the penalty and costs are paid; (*Art.* 16, *sec.* 102, *Code of Pub. Gen. Laws,*) but the party demurring or pleading, does not forfeit the right of filing an answer; to which end, all the process in equity, seems to tend, that the case may be heard on its merits.

There being no error in the order appealed from, the same is affirmed, and the cause will be remanded for further proceedings in conformity with the views expressed in this opinion.

*Order affirmed, and*
*cause remanded.*

(Decided 3rd June, 1875.)