## JACOB HYMER *v.* GROCERS' SUPPLY CO., INC.
### [No. 37, Apirl Term, 1932.]

*Decided June 21st, 1932.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Louis S. Ashman,* with whom was *Martin W. Seabolt* on the brief, for the appellant.

*Harry O. Levin,* for the appellee.

Parke, J., delivered the opinion of the Court.

On June 19th, 1931, the bill of complaint in this case was filed by Jacob Hymer against the Grocers' Supply Company, Incorporated, and the prayer was to enjoin the company, its officers and agents, from disposing of any of the assets of the corporation, for a receiver to administer the business and affairs of the corporation, and for general relief. The cause never advanced beyond the pleadings, and the record will be best understood by their successive statement.

The bill of complaint alleged that the plaintiff sold his grocery business and the premises where it was conducted to the defendant corporation in September, 1930, in consideration of the issue to the plaintiff of twenty shares of class B stock of the purchaser, ten shares of its class C stock, and the assumption by the purchaser of the existing indebtedness of the business sold. The seller was elected a director and an officer whose duties were nominal and were never assumed by the plaintiff. He was a director in February, 1931, when the plaintiff became engaged in litigation with the defendant over a leasehold interest, and, questioning the good faith of the officers and other directors of the defendant corporation in the conduct of its corporate affairs, threatened to institute proceedings to put the business of the corporation in the hands of a receiver. Before this time, the bill of complaint avers that the plaintiff had not been notified of the time and place of the meetings of the defendant's board of directors, and had not been informed of the actual state of the defendant's affairs; but in February, 1931, the plaintiff was advised by the officers and the other directors of the corporation in active charge of its affairs that the corporation was insolvent. Thereupon the plaintiff and other stockholders, who composed its officers and directors, arranged to obtain a loan of $5,000 to the corporation from a certain Louis Salganik, provided that the anticipated bankruptcy proceedings were begun; that a twenty-five per centum settlement could thereafter be made with the unsecured credi-

tors of the corporation; and that the plaintiff and other stockholders would assign their stock to Salganik as security for the loan of $5,000 in order that the rights of the stockholders be deferred to the claim of Salganik for this proposed loan.

Within a short time after this tentative plan was formed, the plaintiff, officers, directors, and Selganik met, and the assets and liabilities of the corporation were reported, and considered as represented, and the plaintiff was asked to resign as director and officer, and to assign his stock to Salganik, in accordance with the plan which had been adopted as here set forth. The impending bankruptcy proceedings were filed, and the proposed compromise settlement of the claims of the unsecured creditors of the bankrupt was accepted, and Salganik accordingly advanced $5,000. It later developed that the loan was not enough, and Salganik ultimately would have to advance $7,800 to fulfill the composition made by the corporation with its unsecured creditors.

The allegations of the bill of complaint are supplemented by two exhibits. They are a letter of March 3rd, 1931, from the corporation to the plaintiff, and .the receipt given on March 5th to the plaintiff for the shares of stock delivered by him in fulfillment of the agreement with the company and Salganik. This letter and receipt contain in writing the agreement of the plaintiff and the defendant. Whatever may have been the preliminary estimated sum requisite to effect a composition on the basis of the payment of twenty-five per centum of the claims of the unsecured creditors, the agreement fixed the percentage to be paid, but the total amount to be advanced was to be determined by the total of the demands of these creditors, and the property in the plaintiff's stock was to remain in him, subject only to the cash advancement of Salganik in accordance with the terms of an agreement which was to be entered into by the defendant and Salganik. This last-mentioned agreement is not referred to in the bill of complaint, so its terms are unknown, but, in the absence of an allegation to the contrary, will be assumed to be in conformity with the stated contract. Inasmuch as

the bill states the composition was consummated, the pleader must be held to the contract as it is found in his bill of complaint, and his equity will depend upon the effect of his averments when measured by his contractual rights and liabilities.

With these alleged facts as the basis of his complaint, the grievances are that, before the composition with creditors was actually completed, Salganik, with the consent and co-operation of the officers and directors, other than the plaintiff, took full charge of the assets and affairs of the corporation, and, without the consent and approval of the plaintiff, had himself appointed or elected as the president and executive head of the corporation, and advanced about $8,000 to the corporation in connection with the payment of the composition money and for other purposes; and that Salganik, since March 3rd, 1931, has, with the consent and approval of the other officers and directors, manipulated the assets and affairs of the corporation entirely with the view of obtaining the repayment of said sum of $8,000; and, with the further view of giving unlawful and illegal preferences to certain other officers and directors, and in pursuance of said motives and plans, the said Louis Salganik, with the approval and consent of the said other officers and directors, has wasted a large portion of the assets of the defendant corporation, has disposed of one of the stores of the defendant at a grossly inadequate price, and is about to dispose of the remaining store of the defendant corporation, located at 3325 Garrison Boulevard, and all other groceries and assets of the defendant corporation, located elsewhere, at a grossly inadequate price or consideration; and the said Louis Salganik has subjected the said defendant corporation to large expenditures for his own benefit and for the benefit of the said other officers and directors, and against the interest of the defendant corporation and the plaintiff as a stockholder of the defendant corporation.

The bill of complaint further charges that the plaintiff has been denied representation in the affairs of the company, and any information in reference to the assets, liabilities, and

expenditures of the corporation since Salganik has assumed control; that the defendant has failed to pay certain specified claims in the sum of $772.50 against the business of the plaintiff, which the defendant agreed to pay when it acquired the plaintiff's business and property, and a claim of the plaintiff and others whose amount and nature are not disclosed; that Salganik is wrongfully retaining the stock of the plaintiff, not only to secure the advancement by him of $5,000, but for all other and greater advancements, and is continuing to direct the affairs of the corporatin to the financial detriment of the plaintiff as a stockholder.

On these allegations an order was passed requiring the defendant to show cause why the relief prayed should not be granted. Within the time specified, an answer was filed which denied the material allegations of the bill of complaint, and set up by way of defense a particular narrative of what had been done, which, if true, would fully exonerate Salganik and all others against whom the bill had preferred charges, and cause a dismissal of the bill of complaint as being wholly unfounded.

This answer brought the cause to an issue on July 6th, 1931, and cast upon the plaintiff as the actor the burden of proceeding. Rule 21 of General Equity Rules. His next step, however, was not until October 9th, 1931, when he filed a petition and obtained leave to take testimony. The record shows that no testimony was returned, but on December 10th, 1931, the plaintiff filed a petition in which the fact of the institution of the suit and its nature are set forth, together with the relief prayed. The petition further avers that since the institution of the suit Salganik and the president of the corporation have continued to manipulate and conduct the affairs and assets of the corporation solely for their own benefit, have remained in complete and illegal charge and possession of the property and assets of the corporation, and, on October 20th, 1931, sold the store and all the other assets of the corporation in bulk unto the daughter of Simon Trepolsky, president of the corporation, for $5,157.39, of which $2,407.39 was paid in cash and the residue was to be paid

on credit terms; and that the sale was in bulk and was not submitted to or approved by the stockholders, and was unknown to the plaintiff until some time after the daughter took possession of the assets, and was made at a grossly inadequate price, in private, and without competitive bids, and for the sole purpose of creating an illegal and wrongful preference and advantage to the said Salganik and Trepolsky and the latter's daughter; and that the said Salganik and the president remain in possession of the books and records and securities of the corporation, and have called no meeting of stockholders of the corporation and have done all these things to the detriment and against the interest of the plaintiff as a stockholder and creditor of the corporate defendant. On these allegations the petition prayed the appointment of a receiver to assume charge of and administer the business and affairs of the defendant corporation under the direction and control of the court.

The chancellor passed an order on this petition on December 10th, requiring the defendant to show cause, on or before December 15th, why a receiver should not be granted as prayed, and the defendant came into court on December 11th, and asked for an extension of the time to answer, as its solicitor was obliged to leave the city on that day and would not return until December 15th, and it would be impossible for an answer to be filed until after his return. The court granted the requested extension until January 4th, 1932, and the plaintiff, notwithstanding this order, moved the court to require the defendant to answer forthwith, and the chancellor directed the defendant to appear in court on December 28th, 1931, and show cause why a receiver should not be appointed. The defendant appeared on the day named and demurred to the petition filed on December 10th, and to the supplemental petition filed on December 15th. The chancellor's decree overruled defendant's demurrer to the plaintiff's two petitions, and dismissed the bill of complaint. The plaintiff entered an appeal from this decree. He has no ground of appeal on the ruling in his favor on the demurrers, which left the bill of complaint and answer thereto

and the first petition, whose office was that of a supplemental bill alleging acts of the defendant after the bringing of the suit.

The general rule is that matters which have occurred since the filing of the bill of complaint cannot be added to it by amendment, but must be presented by a supplemental bill, which should be done by leave of the court upon sufficient cause shown. *Miller's Equity Proc.*, secs. 187, 194, 195. The practice was not here followed; and, upon the overruling of the demurrer, the defendant did not answer, but the chancellor's decree declared that the question of the appointment was submitted on bill of complaint and answer. *Fledderman v. Fledderman,* 112 Md. 226, 244, 76 A. 85. The effect of this submission, without evidence in support of the bill of complaint, was an abandonment of the supplemental petition or bill, and a consent to a hearing upon the original bill and answer. *Manor Coal Co. v. Beckman,* 151 Md. 102, 110, 133 A. 893; *Miller's Equity Proc.,* sec. 624. At this hearing the averments of the answer, so far as responsive, were taken as true; and, as these not only categorically denied the allegations of the bill of complaint, but also showed affirmatively that the defendant corporation and those acting in its behalf were not guilty of any breach of duty, the chancellor could do no less than dismiss the bill of complaint. *Miller's Equity Proc.,* secs. 623, 624; *Seeley v. Dunlop,* 157 Md. 378, 146 A. 271; *Farmers' & Planters' Co. v. City of Salisbury,* 136 Md. 617, 620, 111 A. 112.

The manner in which the cause was adjudged below left undetermined the issues of fact. While the charges made are vague and general, they may be susceptible of a presentation which will entitle the plaintiff here to equitable relief. The court will therefore affirm the decree, but without prejudice to the right of the plaintiff in any new proceedings which the facts, artificially stated, may justify. *Block v. City of Baltimore,* 149 Md. 39, 60, 129 A. 887.

> *Decree affirmed, with costs, but without prejudice to the plaintiff.*