W. L. BRANN, ET AL., *v.* GEORGE P. MAHONEY, ET AL., COMPRISING THE MARYLAND RACING COMMISSION

[No. 170, October Term, 1945.]

90

*Decided July 23, 1946.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, and HENDERSON, JJ.

*Philip B. Perlman,* with whom was *Harry Troth Gross* on the brief, for the appellants.

*Hall Hammond, Deputy Attorney General,* with whom was *William Curran, Attorney General,* on the brief, for the appellees.

COLLINS, J., delivered the opinion of the Court.

This is an appeal by W. L. Brann and Sylvester W. Labrot, Jr., owners and breeders of race horses, and Edward A. Christmas and Clay Sutphin, licensed trainers of horses, hereinafter known as appellants, from an order of the Circuit Court of Baltimore City sustaining a demurrer to the supplemental bill of complaint, filed by them, without leave to amend and dismissing the supplemental bill.

The appellants filed an original bill of complaint in which Messrs. Brann and Labrot alleged the fact that they were owners and breeders of race horses and had a considerable investment in the business. The following facts were alleged in the original bill. Christmas is employed as a trainer for Brann, and Sutphin is employed as a trainer for Labrot. Both Christmas and Sutphin had been duly licensed by the Maryland Racing Commission to train race horses, making the customary annual application therefor, paying the established fees and receiving the annual license issued by the Maryland Racing Commission of which the appellees herein are members.

The bill of complaint recites Sec. 11 of Article 78B giving the Racing Commission power to prescribe rules and regulations and conditions under which all horse races shall be conducted in this State. It further recites the provisions of Rule 146 adopted by the Racing Commission which provides in paragraph (d), and under which the Commission operated in the case at bar, that, if it is found by analysis that any drug has been administered to a horse forty-eight hours before the race, the trainer shall be subject to suspension whether or not he administered the drug or knowingly or carelessly per-

mitted it to be administered. ‑ Sub-section (e) of paragraph (d) further provides as follows: "The fact that the analysis shows the presence of a drug shall be conclusive evidence either that there was knowledge of the fact on the part of the trainer or that he was guilty of carelessness in permitting it to be administered." Section (f) is a definition of the term "drug."

Rule 146, Sections (a) and (d), are set out in full in the case of *Mahoney et al. v. J. Dallet Byers,* 187 Md. 89, 48 A. 2d 600.

The bill further alleges that Brann sent fourteen horses to the Pimlico Race Track where they were stabled during the race meeting and he entered different horses from time to time in various races. The races, race course, stables, and officials are under the control of the Maryland Racing Commission to take whatever measures might be necessary to safeguard and protect the rights and properties of the various owners including the said Brann and Labrot. Brann's horses were in charge of appellant Christmas. The three horses owned by Labrot were in charge of the appellant Sutphin. During the Pimlico meet samples of saliva and urine of horses were taken daily after each race. The Maryland Racing Commission shipped false samples of saliva to the laboratory of the New York Racing Commission, and at the same time sent genuine samples to the laboratory of the University of Maryland.

On Monday, November 19, 1945, samples of saliva taken from horses which participated in the racing at Pimlico on that day were left in the laboratory of the University of Maryland. The next day, on account of the illness of the person in charge of the analysis of the samples, about fifteen saliva samples were removed from the laboratory in Baltimore and taken to a Dr. Munch in Upper Darby, Pennsylvania, where they were analyzed. On the night of November 28, 1945, the Maryland Racing Commission sent a telegram to the appellant, Christmas, advising him that a test of the sample taken from the horse named New Challenge, owned by appellant, Brann,

on November 19, 1945, showed that it contained a stimulant and further advising him that all horses trained by him were suspended beginning November 29, 1945. A similar telegram was sent to appellant, Sutphin, with respect to the horse named Shako, owned by appellant, Labrot. The effect of these notices was to suspend appellants, Christmas and Sutphin, as trainers and to disqualify from racing all horses owned by appellants, Brann and Labrot, on all race tracks in the State of Maryland, and also on all the tracks in the United States where the actions of the Maryland Racing Commission are followed automatically by prior agreement. At the time this action was taken by the Maryland Racing Commission against the appellants similar action was taken against three other owners and three other trainers.

The appellants were notified that the charges against them would be heard on December 10 and 11, 1945. On December 9, 1945, the Maryland Racing Commission, appellee, sent another telegram to appellant, Christmas, advising him of the alleged finding from a horse named Weathercock owned by appellant, Brann. Hearing on this alleged finding was scheduled for December 11, although the appellants had no notice until the night of December 9th.

Meanwhile, on December 3, 1945, counsel for appellants addressed a letter to the Maryland Racing Commission asking for particulars and specifications of the charges against the appellants in order to prepare for the hearing and properly to present the defense. On December 5, 1945, Mahoney, one of the appellees, replied for the Commission declining, as to some of the particulars requested, to furnish the information prior to the hearing. He alleged that other requested information was immaterial.

The appellants were thus forced into a hearing without sufficent information and without any opportunity to prepare an answer. Brann was residing in Florida and Labrot in Louisiana. It was impossible for either of these two appellants to reach Baltimore within the limited period fixed by the appellee, and this action by the appellee

operated to deprive them of their rights and privileges without an opportunity to be present at the so-called hearing, to produce their witnesses and be heard before any action could be taken against them.

The Commission wrote a letter dated December 5, 1945, promising appellants an opportunity for investigation and rebuttal, and every opportunity to present all material facts. This promise was repeated orally to counsel for appellants on December 10, 1945. The understanding was that the Commission, appellee, would present its testimony and then adjourn until appellants had reasonable opportunity to study the stenographic record and to prepare their defense. The next morning, December 11, however, the Commission advised counsel for appellants that appellants' testimony must be presented on December 19, later changed to December 20th. Inasmuch as copies of the stenographic transcript were not delivered to counsel for appellants until December 14th, the appellants were unable to make the necessary studies as to the analyzing of the samples of saliva and urine.

It developed at the hearing before the appellees on December 10 and 11, 1945, that the stimulant allegedly discovered from the horses, New Challenge, Shako, and Weathercock was morphine. The Commission withheld this information until the hearing was underway, thereby giving the appellants no real opportunity to meet this charge. The allegation that morphine was used is of the gravest nature, as the unauthorized use of this drug is a Federal offense. All of the fifteen samples examined in Upper Darby, Pennsylvania, were reported to show the presence of morphine. The appellants do not yet know whether the analysis was erroneous, not being advised as to conditions under which the analysis was made, whether samples were contaminated, and methods of transportation and shipment. The Commission refused the appellants' request, made at the hearing, that Dr. Morgan, chemist of the New York Racing Commission, be invited to testify, although his testimony had been used and relied on by the appellees in previous cases.

The newspapers and radio were supplied with information concerning these charges made against the appellants, before notices were received by the appellants from the Commission. Further, on December 11, 1945, one of the appellees, George P. Mahoney, chairman, according to statements made to counsel for appellants, gave an interview to a reporter of a world-wide news service in which Mahoney indicated that five trainers, including Christmas and Sutphin, would be suspended for one year "regardless of additional facts yet to be revealed in hearings." This statement appeared in newspaper articles in Philadelphia and Baltimore. Counsel for the appellants have been advised that such statements were actually made by the appellee, Mahoney, and are prepared to prove that such statements were made in the presence of a number of newspapermen.

The bill alleges further, "These complainants believe and therefore aver and allege that the defendant, George P. Mahoney, chairman of the Maryland Racing Commission, has prejudged the complainants' cases, has made up his mind before any defenses are presented, and is prepared and ready to act aversely to these complainants without giving them an adequate opportunity to meet the charges, and without regard to any and all of the testimony yet to be offered on behalf of the complainants. And these complainants believe and therefore aver and allege that the defendant, George P. Mahoney, is or should be disqualified from conducting any further hearings of the charges against these complainants, or taking any action which he has indicated he is prepared to take before the complainants have their defenses and testimony in support of them."

The bill further alleges that the Rule 146 Section (d) and (e), which make the presence of a drug conclusive evidence, is not authorized by law and is invalid.

The appellants further say that they never administered, or knowingly, or carelessly permitted any drug to be administered to the horses mentioned herein.

And further it is stated that "These complainants al-

lege that their reputations as good, honest and loyal citizens are being impaired, and that they are being put to great inconvenience and expense and loss because of unfounded charges made under the defendants' invalid rules and regulations; and that this great inconvenience, expense and loss, and injury to reputation and high standing in the community will continue and be materially increased unless this Honorable Court intervenes to protect and safeguard these cómplainants, and, to grant them the rights, privileges and immunities to which they are entitled under the laws of the land. That these complainants, being denied a full and fair opportunity to prepare their defenses before the Maryland Racing Commission, and being denied a fair trial of the issues on which a judgment has already been announced in advance of hearing, have no adequate remedy at law."

The bill of complaint prayed that Rule 146 and especially sub-paragraphs (d), (e), and (f) be declared void. That the appellees be preliminarily and perpetually enjoined by a writ of' injunction from attempting to enforce the provisions of this Rule against them. Further that the appellees be enjoined from conducting any further hearings as to analysis of samples of saliva and urine from the horses New Challenge, Shako, and Weathercock. The bill also asked for further relief.

The appellees demurred to this original bill of complaint. After hearing the Chancellor, on February 25, 1946, by decree declared Rule 146 (d) of the Maryland Racing Commission aforesaid invalid. He overruled the demurrer to the bill and gave leave to the appellees to answer within five days and upon failure of appellees to answer within five days they were to pay the costs of the proceedings.

In the opinion of the chancellor filed with this order he made the following statement: "In *Maryland Theatrical Corporation v. Brennan*, 180 Md. 377, at page 389 [24 A. 2d 911, at page 917], the Court of Appeals, having declared the invalidity of a statute, said, in regard to the prayer for an injunction, that there was no occásion for the

issuance of an injunction, since it is to be presumed that the Police Commissioner would take notice of the declaratory decree, and act accordingly. The same considerations apply here, as it is to be presumed that The Racing Commission will likewise take notice of the declaratory decree to be made herein."

The chancellor evidently thought that his ruling on the demurrer would have the effect of restoring the licenses and end the proceedings before the Commission. After waiting from February 25th, no answer having been filed by appellees, on April 5, 1946, the appellants filed a supplemental bill reciting the filing of the original bill herein and set out the decree of the court declaring Rule 146 (d) invalid. The supplemental bill further recited: "* * * The respondents failed to file an answer within the time allowed by this Honorable Court and are now in default for want of a defense to any and all of the allegations contained in the Bill of Complaint."

"3. On March 2nd, 1946, the Superior Court of Baltimore City granted a petition for a writ of mandamus brought against the respondents by a trainer of race horses who had been suspended after hearing by the respondents, Byers v. Mahoney, et al., Daily Record, March 4th, 1946, the Court filing a written opinion in which the opinion of this Court was adopted, and in which Rule No. 198 of the Maryland Racing Commission was also held to be invalid."

"4. That following the opinion and order by the Superior Court, the respondents lifted the disqualification of the race horses owned by the Complainants W. L. Brann and Sylvester W. Labrot, Jr., and lifted the suspension as trainers of the Complainants Edward A. Christmas and Clay Sutphin, issuing them new trainer's licenses bearing the following qualification: 'The issuance of this license is not to be, nor to be construed as a waiver of any right of the Commission to revoke or suspend it for any reason or cause now or hereafter legally permitting such action.' The respondents have

appealed the order of the Superior Court to the Court of Appeals of Maryland, and the Deputy Attorney General has advised counsel for the Complainants that if said order is reversed on appeal, the respondents intend again to proceed against the Complainants, and to hold hearings, or additional hearings, on the same charges or on charges involving the same circumstances described in the Bill of Complaint."

"5. These Complainants respectfully represent that the dismissal or other disposition of the charges involving them should not be dependent upon the findings by the Court of Appeals in some other case, where the facts and circumstances are entirely different. The Complainants Edward A. Christmas and Clay Sutphin are entirely innocent of any charges preferred by the respondents, and the respondents have no evidence whatsoever to prove that they or either of them violated any valid rule of the Maryland Racing Commission, as will appear from copies of the stenographic transcript of testimony taken before the respondents on December 10, 11 and 12, 1945, filed herewith, designated Complainants' Exhibit, and prayed to be taken as a part hereof as if fully set forth herein. *Said transcript contains all of the testimony which the respondents admitted they were able to produce.*" (Italics here.)

"6. Notwithstanding the decision and orders of this Honorable Court and of the Superior Court, the respondents have withheld and continue to withhold approval of the payment to Complainant W. L. Brann of the purse won by his horse New Challenge at Pimlico on November 19th, 1945 ($2,200.00), although he has been paid the purse won by his horse Weathercock at Pimlico on November 27th, 1945 (2nd place, $500.00); and the respondents continue to withhold from the Complainant Sylvester W. Labrot, Jr., approval of the payment of the purse won by his horse Shako at Pimlico on November 19th, 1945 ($2,200.00)."

"7. The Complainants Edward A. Christmas and Clay Sutphin do not know whether the respondents have

abandoned the charges against them brought under the invalid rules, or whether the respondents have abandoned efforts to hold hearings on the same charges under such parts of their rules as may be valid; or whether the commission proposes to attempt at any time in the future to bring new charges based on the circumstances described in the Bill of Complaint and more fully set forth in the stenographic transcript of testimony filed herewith, but said Complainants, being innocent of any and all said charges, are entitled to receive and hold their trainer's licenses without any qualifications whatever, express or implied, arising from the circumstances herein set forth. And the Complainants, William L. Brann and Sylvester W. Labrot, Jr., are entitled to have the purses won by their horses paid to them forthwith, and not to be subjected further to annoyance and harassment by the respondents. Written application made by counsel for the Complanants for the release of the purses due since November, 1945, has resulted in notice by counsel for respondents that said purses would not be released until the Court of Appeals acts in a case to which these Complainants are not parties."

The appellants asked that the appellees be ordered to grant to appellants Christmas and Sutphin permission to train race horses in Maryland without reservation or qualification, expressed or implied, based on charges heretofore made by the appellees; further that the appellees be ordered to release the purses won at Pimlico during the month of November, 1945, by the race horses owned by the appellants, Brann and Labrot; further that the appellants be granted other and further relief.

A demurrer was filed to this supplemental bill by the appellees and by decree passed on April 29, 1946, the chancellor sustained the demurrer to the supplemental bill of complaint without leave to amend and dismissed the bill. From that decree the appellants appeal.

It is a well recognized rule that in order for complainants to be entitled to file a supplemental bill circumstances must occur which, without abating the suit, have

occasioned an alteration in the interest of any of the parties or render it necessary that new parties should be brought in court, or some event must have occurred subsequent to the filing of the original bill to change the interest of the parties or any of them. *Miller's Equity Procedure*, Sec. 193; *Collateral Security Bank v. Fowler*, 42 Md. 393, 398; *O'Hara v. Shepherd, et al.*, 3 Md., Chap. 306. The general rule announced by this court is that nothing which has occurred since the filing of a bill can be added to it by amendment but must be brought in by supplemental bill. *Poe v Munich Re-Insurance Co.*, 126 Md. 520, 531, 95 A. 164; *Hymer v. Grocers' Supply Co.*, 163 Md. 146, 152, 161 A. 155; *Cook v. Holly-day*, 185 Md. 656, 45 A. 2d 768. A supplemental bill should be filed by leave of court upon sufficient cause shown. Although no specific authority was given by the court to file this supplemental bill, the chancellor approved its filing because, when it was presented to him, he passed an order requiring the appellees to show cause within fifteen days why the relief prayed for should not be granted. In this case, according to the allegations of the supplemental bill, new events have occurred in that the disqualification of the race horses owned by appellants, Brann and Labrot, has been lifted and suspension of appellants, Christmas and Sutphin, has also been lifted. However, this was done condi-tionally as set out in the supplemental bill. These new events were such as to entitle the complainants to file a supplemental bill as they occurred after the filing of the original bill.

The appellees did not appeal from the decree of Feb-ruary 26, 1946, declaring Rule 146 (d) invalid. Further this court has, in the case of *Mahoney, et al. v. J. Dallet Byers, et al.*, 187 Md. 89, *supra*, held Rule 146 (d) in-valid.

This case comes before us on demurrer. We must therefore consider all allegations well pleaded as true. From those allegations we must decide whether the

appellees should file an answer to the charges alleged against them.

It is a well established rule that the ruling of a lower tribunal cannot be reviewed until final judgment is given by such tribunal. *Gittings v. State, to Use of Ockerme,* 33 Md. 458, 461; *Moale v. Smith,* 86 Md. 683, 684, 37 A. 370; *Hayman v. Lambden,* 97 Md. 33, 34, 54 A. 962; *Boteler & Belt v. State, to Use of Chew's Creditors,* 1835, 7 Gill & J. 109, 113; *Farmers' & Merchants' Nat. Bank of Cambridge v. Harper,* 153 Md. 128, 137 A. 702; *Purdum v. Lilly,* 182 Md. 612, 35 A. 2d 805.

On the other hand, it is an equally well established rule that after equitable jurisdiction attaches it will be retained so as to give full relief even as to matters with regard to which equity would ordinarily have had no jurisdiction. *Linthicum v. Washington, B. & A. Elec. R. Co.,* 124 Md. 263, 273, 92 A. 917; *Gibula v. Sause,* 173 Md. 87, 94, 194 A. 826. The equity court overruled the demurrer to the original bill and thereby retained jurisdiction. No appeal was taken by the appellees from the order, consequently the supplemental bill was properly before the equity court. The cases supporting this doctrine were cited in the recent case of *Cook v. Hollyday,* 185 Md. at page 656, 45 A. 2d at page 771, *supra.*

As the original bill of complaint was attached to the supplemental bill and made a part thereof and as the demurrer was overruled as to the original bill, it is difficult to understand why the demurrer to the supplemental bill, which incorporated the original bill, could be sustained. Where a general demurrer is filed to the whole bill and it be found that part of the bill is good and petitioner is entitled to some relief, the general demurrer should be overruled. *Levin v. Hirschman,* 158 Md. 162, 165, 148 A. 228; *Miller's Equity Procedure,* Sec. 134, p. 172.

Article 78B of Flack's Annotated Code, 1939, Section 11, gives power to the Racing Commission to prescribe rules and regulations under which all horse races shall

be conducted in this state. As pointed out in the case of *Mahoney, et al. v. Byers, supra,* they may make rules regulating the conduct of trainers, jockeys, and owners in order that horse racing may be conducted fairly. Further, it was there held that trainers of race horses have a right to engage in their vocation provided they conform to reasonable rules adopted by the commission. It was pointed out in that case, with authority cited, that the violation of such rights of trainers by the commission can be reviewed by the court in a mandamus proceeding. Further the court may cure abuses of discretion and arbitrary, illegal, and unreasonable acts. It was said by Chief Judge Marbury in the case of *Maryland Theatrical Corporation v. Brennan,* 180 Md. 377, at page 383, 24 A. 2d 911, at page 915, "The usual rule with respect to delegations of the police power to administrative officials is that they must be surrounded with such safeguards that the official cannot arbitrarily, at his own will and pleasure, determine whether or not certain businesses or amusements can operate."

The statute 78B creating the Maryland Racing Commission provides for no appeal except for the provisions of Section 10 for review upon questions of law only. If no right of appeal is provided and where the commission has acted under an invalid rule, the persons injured should be entitled to seek the aid of a court of equity. The case at bar is not in the same classification as those of *Tawes, Comptroller v. Williams,* 179 Md. 224, 17 A. 2d 137, 132 A. L. R. 1105, and *Stark v. Christie,* 179 Md. 276, 19 A. 2d 716, where rights of appeal were provided in the statutes and where this court held that the remedies provided by the appellant should first be exhausted before applying for relief to an equity court or for a writ of mandamus.

It is well established, as pointed out in the very recent case of *Davis v. State,* 183 Md. 385, at page 389, 37 A. 2d 880, at page 883, and cases there cited, that a court of equity has power to restrain the enforcement of a

void statute or ordinance at the suit of a person injuriously affected. The person alleged to be injuriously affected should not be compelled to wait for final action of the lower tribunal before seeking relief in equity by injunction where it is admittedly alleged, as in the case at bar, that the lower tribunal is proceeding under an invalid rule. It was said by Judge Miller in the case of *Mayor, etc., of Baltimore v. Radecke,* 49 Md. 217, at page 231, 33 Am. Rep. 239, "As to the question of jurisdiction we have no doubt. It has been decided by this court in too many cases to be longer open to question that where a municipal corporation is seeking to enforce an Ordinance which is *void,* a court of equity has jurisdiction at the suit of any person injuriously affected thereby, to stay its execution by injunction." *Clark v. Harford Agri. & Breeding Ass'n,* 118 Md. 608, 615, 85 A. 503; *Painter v. Mattfeldt,* 119 Md. 466, 471, 87 A. 413; *Maryland Co-op. Milk Producers v. Miller,* 170 Md. 81, 182 A. 432.

The case of *Columbia Broadcasting Co. System, Inc. v. United States,* 316 U. S. 407, 62 S. Ct. 1194, 86 L. Ed. 1563, involved an appeal from a judgment granting a motion to dismiss the complaint in an action to enjoin enforcement of an order of the Federal Communications Commission. Chief Justice Stone in that case pointed out that allegations of complaint must be accepted as true and said, 316 U. S. at page 425, 62 S. Ct. at page 1204, 86 L. Ed. 1563, "The ultimate test of reviewability is not to be found in an overrefined technique, but in the need of the review to protect from the irreparable injury threatened in the exceptional case by administrative rulings which attach legal consequences to action taken in advance of other hearings and adjudications that may follow, the results of which the regulations purport to control."

In the case of *Pierce v. Society of Sisters,* 268 U. S. 510, 69 L. Ed. 1070, the owners of private schools contested the constitutionality of an act requiring children to attend public schools. Justice McReynolds said in

that case, 268 U. S. at page 536, 69 L. Ed. 1070, "The suits were not premature. The injury to appellees was present and very real, not a mere possibility in the remote future. If no relief had been possible prior to the effective date of the act, the injury would have become irreparable. Prevention of impending injury by unlawful action is a well-recognized function of courts of equity." *Euclid, Ohio v. Ambler Realty Co.*, 272 U. S. 365, 47 S. Ct. 114, 71 L. Ed. 303, 54 A. L. R. 1016; *Burco Inc. v. Whitworth*, 81 F. 2d 721.

Furthermore, the supplemental bill alleges that the testimony already taken before the commission was all the testimony which the appellees admitted they were able to produce. Although the demurrer to the original bill was overruled on February 26, 1946, the appellees filed no answer to that bill. The appellants waited until April 5, 1946, to file the supplemental bill, which alleges that the licenses were only conditionally returned. The commission was still holding the purses won in the races in question and the final decision depended upon the decision of another case in this court to which the parties herein were not parties. Although the appellants, under the ruling of the chancellor, filed an original bill entitling them to relief, and the original bill was incorporated in the supplemental bill, no relief was given. This court is of opinion that the supplemental bill should be answered and the appellees should say whether or not they have additional evidence to offer against the appellants to justify their action in only a conditional return of the licenses and the retaining of the purses won by the appellants.

It will be further noted that the bill of complaint alleges that the chairman of the Racing Commission has pre-judged the case and decided it before any defenses are presented, and was prepared to decide adversely to these appellants without giving them a right to offer testimony in their behalf. This allegation should be answered. If it is not true the answer should so state. *State Board of Funeral Directors and Em-*

*balmers, et al. v. Cooksey,* 148 Fla. 271, 4 So. 2d 253; *Narragansett Racing Ass'n v. Kiernan,* 59 R. I. 90, 194 A. 692.

When an answer has been filed, it will become apparent whether or not the appellees intend to proceed further. If they do not so intend, the appellants are entitled to their licenses and their purses. If the appellees state they intend to proceed further, the chancellor should direct such proceedings to be promptly conducted so that the appellants may have their rights determined. It is not intended by anything we have said to indicate that the chancellor should hear testimony in this case in advance of final action by the appellees.

Being of opinion that the appellees should answer the allegations of the supplemental bill, the decree sustaining the demurrer to the supplemental bill should be reversed.

> *Decree reversed with costs, and case remanded for further proceedings.*